# WALKER v. CAMP.

1. **Malicious Prosecution**: FOR SALE OF MORTGAGED CHATTELS: EVIDENCE OF MORTGAGEE'S CONSENT. In an action by a mortgagor of chattels against the mortgagee, for maliciously prosecuting him for larceny in disposing of the mortgaged property, parol evidence was properly admitted to show that, *while the mortgage was being drawn*, the mortgagee consented that the mortgagor might sell the chattels (hogs) whenever they were fit for market. The rule against admitting evidence of a contemporaneous parol agreement to vary the terms of a written contract does not apply in such a case. (*Walker v. Camp*, 63 Iowa, 627, distinguished.)

2. ———: ———: EVIDENCE: CONSENT OF MORTGAGEE: INTENT TO MISAPPLY PROCEEDS. In such a case, where the evidence tended to show that the sale had been made with the mortgagee's consent, *held* that evidence tending to show that the mortgagor, when he made the sale, intended to appropriate the proceeds to his own use, and not to apply the money on the mortgage debt, was not admissible.

3. ———: ———: ———: CONDITION. In such case, where the mortgagee gave his consent to the sale of the hogs by the mortgagor whenever they should be fit to market, with the remark that the mortgagor would have young hogs coming on all the time to take the place of those sold, *held* that this remark was not the expression of a condition limiting the right to sell, and that it was immaterial whether the mortgagor did or did not have young hogs coming on at the time when he sold the mortgaged ones.

4. ———: MALICE: ADVICE OF COUNSEL: INSTRUCTION. Where in such case the defendant introduced evidence showing that he had consulted counsel about the matter before he made complaint before the grand jury, though it was not made to appear what advice his counsel gave him, *held* that the court was justified in instructing the jury as to the bearing of the advice of counsel, if taken, upon the question of malice.

*Appeal from Blackhawk Circuit Court.*

THURSDAY, APRIL 22, 1886.

ACTION for malicious prosecution. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff. The defendant appeals.

*Boies, Husted & Boies,* for appellant.

*O. C. Miller,* for appellee.

ADAMS, CH. J.—This case is before us upon a second appeal. The first opinion is reported in 63 Iowa, 627.

I. The plaintiff avers that the defendant maliciously, and without probable cause, procured him to be indicted and pros-

1. MALICIOUS prosecution: for sale of mortgaged chattels: evidence of mortgagee's consent.

ecuted on a charge of grand larceny. The alleged larceny consisted, as is charged, in selling mortgaged personal property, to-wit: a lot of hogs, without the consent of the mortgagee. The plaintiff does not deny that he sold a portion of the mortgaged property, but he claims that he sold it with the consent of the mortgagee. For the purpose of showing the consent, one Saunders Walker, one of the mortgagors, was introduced as a witness, and was asked to state the conversation which took place at the time the mortgage was being drawn. The defendant objected on the ground that consent on the part of the mortgagees that the mortgagors might sell the property would be inconsistent with the terms of the mortgage; and if there was any such parol consent before the mortgage was executed it must be conclusively presumed that it was waived before or at the time of execution. The court overruled the objection, and the witness answered as follows: "We were making out the mortgage. I said: 'Now, we are giving you a mortgage on this stock, and nothing is due for two years. Do you expect us to keep those hogs two years?' He said that we could sell the hogs whenever they were ready for market. He said we would have young hogs coming on all the time to take their place."

An attempt to raise the question of admissibility of evidence to show such parol consent was made upon the former hearing; but, as the question did not appear to arise properly upon the record, it was not determined. Upon the former hearing it appeared that the inquiry was made as to

what was said about selling the property which *had been* mortgaged. The conversation now shown in evidence took place while the mortgage was being drawn. The statute under which the plaintiff was indicted for selling mortgaged property is section 3895 of the Code. By that statute the selling of mortgaged property without the consent of the *then holder* of the mortgage is made larceny. Before the mortgage was executed it had no existence as a mortgage, and there was no holder at that time. If the defendant gave his consent before the mortgage took effect, he did not give it as holder of the mortgage. This being so, the defendant contends that the plaintiff did not have the consent of the then holder of the mortgage, as the statute provides, in order to justify a sale. But the consent, by its very terms, was given as a continuing consent. It was to continue at least until the act consented to could properly be done, and that was when the hogs should be ready for market. If the consent stood by itself, with nothing to impeach it, it would not be contended for a moment that it did not continue and authorize the sale of the hogs at the time the sale was made. In such case it could not be said that they were sold without the consent of the then holder of the mortgage. We come, then, to the only question which seems to us to present any difficulty, and that is as to whether the rule of evidence relied upon as to the inadmissibility of parol evidence to contradict a written contract is applicable to such a kind of case as this. In answer to this question we have to say that, in our opinion, it is not. The seller of mortgaged property is not to be convicted therefor without a criminal intent. If the consent is such, in whatever way it may be given, that the seller honestly believes that he is authorized to sell the property, his honest act cannot be converted into a criminal one by a technical rule of evidence framed for the protection of civil rights. Most persons, we think, would have done precisely what the plaintiff did if the facts were as the evidence in his behalf tended to show that they were. It may

be that he did not account for the proceeds as he should have done. In respect to that we have nothing to say. The charge was that he committed a crime in making the sale. We are not concerned to know what he did afterwards. In our opinion, the court did not err in admitting the evidence.

II. The counsel for the defendant asked the plaintiff, upon cross-examination, whether, in selling the second and

2. ——: ——: third lot of hogs, he did not intend to appropri-
evidence:
consent of ate the money to his own use, and not apply it
mortgagee:
intent to mis- on the mortgage debt. The plaintiff objected to
apply pro-
ceeds. the question, and the court sustained the objec-

tion. The ruling is assigned as error. The defendant contends that, if the answer had shown that the plaintiff sold the hogs with a fraudulent intent to misappropriate the money, such fraudulent intent would vitiate the consent. The hogs, of course, were not to be sold in fraud of the defendant; but if the sale was made at the time and under the circumstances which the defendant contemplated, that is, when they were ready for market, there was no fraud in making the sale. If the plaintiff had fraudulently obtained the consent, such fraud would of course vitiate the consent. But that is not the defendant's position. The hogs were to be sold when ready for market, and the fraud, if any, must, we think, be deemed to have commenced with the misappropriation.

III. At the time the consent was given, as appears from the evidence already set out, the defendant, in giving the con-

3. ——: ——: sent, added the remark that the mortgagors would
———: condi-
tion. have young hogs coming on all the time to take

the place of the old ones. There was evidence tending to show that at the time some of the hogs were sold the plaintiff did not have young hogs coming on to take the place of the old 'ones. The defendant contends that the having of young hogs to keep the security good was a condition without which the consent was not to be deemed operative. The defendant, in accordance with his theory of the case in this respect, asked that an interrogatory be submitted to the jury

Walker v. Camp.

for a special finding of fact in the matter relied upon. The interrogatory proposed was in these words: "Was such second sale of hogs made by plaintiff and his co-mortgagor before the defendant was informed of the loss or disposition by them of their young hogs, and before defendant knew that plaintiff and his co-mortgagor did not have young hogs which they could substitute as additional security?" The plaintiff objected to the interrogatory, and the court sustained the objection. The having of young hogs was not expressly made a condition of the consent, and the nature of the property was such that we think that the mortgagors might reasonably have supposed that when the proper time came they were to sell at all events, and that the remark about having young hogs was thrown in merely incidentally. Upon a question of criminal intent, it appears to us that we should be going very far if we should sustain defendant's position, and we think that we should not be justified in so doing.

IV. The court instructed the jury, in respect to the advice of counsel, and the bearing that such advice, if taken, would have upon the question of the absence of malice in instituting the criminal proceedings. The instruction appears to be a correct expression of the law, and we do not understand that it is contended that it is not. But the defendant complains upon the ground that there was no evidence before the jury which called for such instruction, and that the jury must have failed to find that he acted under the advice of counsel, and that he was accordingly prejudiced by the instruction. There was, it is true, no evidence, that the jury could properly consider, that the defendant acted under the advice of counsel. Yet when one Charles Bishop was upon the stand, who acted as the defendant's counsel, he was asked by the defendant's present counsel a question in these words: "Before Mr. Camp made the complaint before the grand jury, I desire to ask you whether or not he consulted with you as an attorney in regard to the matter?" and the witness answered, "Yes, sir,

he did." This evidence having been put in by the defendant, we think that the court was justified in giving the jury an instruction in regard to the law pertaining to the advice of counsel in such cases; for, while the evidence was not such that the defendant could properly claim anything from it, there was some danger that the jury might be misled by it.

Aside from the consideration above expressed, some of the members of the court think that the defendant could not have been prejudiced. While we have not expressly considered all the errors assigned, we think that the views which we have expressed cover them substantially.

We see no error in the rulings of the court, and the judgment must be .

AFFIRMED.