R. A. KLETZING V. F. W. ARMSTRONG, Appellant.

119  505
126  300

119  505/
129  130/

119  505/
135  741/

119  505
144  97

Malicious Prosecution:   SALE OF MORTGAGED PROPERTY:   WRITTEN
    CONSENT:   ORAL PERMISSION:   EVIDENCE.   In a prosecution for
    the sale of mortgaged property under Code section 4852, the
    criminal intent of the mortgagor must be shown, even though
    he did not have the written consent of the mortgagee to sell;
    and where the mortgagor sells with oral consent and applies
    the proceeds on the mortgage debt, and is afterwards pros-
    ecuted by the mortgagee, he can maintain an action for malic-
    ious prosecution.

Evidence:  CONVERSATIONS WITH COUNTY ATTORNEY.   Evidence of con-
    versations with the county attorney in relation to the prose-
    cutions are immaterial.

*Appeal from Marshall District Court.*—HON. G. W. BURN-
HAM, Judge.

FRIDAY, FEBRUARY 6, 1903.

ACTION for malicious prosecution.   Verdict for plain-
tiff.   From judgment on verdict defendant appeals.—
*Affirmed.*

*F. E. Northrup* and *Binford & Snelling* for appellant.

*Boardman, Aldrich & Lawrence* for appellee.

McCLAIN J.—Plaintiff seeks to recover damages for
three different prosecutions instituted by defendant
against plaintiff in justice's court for selling mortgaged
chattels without the written consent of the mortgagee in
violation of the provisions of Code, section 4852.   With
reference to the evidence it is sufficient to say that defend-
ant as agent for another held chattel mortgages on do-
mestic animals of plaintiff to secure the repayment of bor-
rowed money; that in two or three different instances

plaintiff sold different animals covered by these mortgages, but as his evidence tends to show in pursuance of oral consent of the defendant, in each instance paying over to defendant to be applied on the indebtedness sums of money equaling or exceeding that received for the animals sold; that some controversy arose between plaintiff and defendant as to the amount due defendant and as to the application of some payments which had been made; that some time after all of the acts which were charged in the prosecutions to have been unlawful were committed, and after the disagreement between the parties as to applications of payments and amount of indebtedness, defendant caused three successive charges to be made against plaintiff before a justice of the peace for selling the mortgaged property without the defendant's consent, the three different charges being with reference to different animals; that each of the prosecutions terminated favorably to this plaintiff and this action was then commenced to recover damages for malicious prosecution.

The most important question presented by counsel for appellant is as to the construction of Code, section 4852, which reads as follows:

"If any mortgagor of personal property, while the mortgage upon it remains unsatisfied, wilfully destroy, conceal, sell or in any manner dispose of the property covered by such mortgage without the written consent of the then holder of such mortgage, he shall be guilty of larceny and punished accordingly." The contention of counsel is that no consent of the mortgagee, unless in writing, should be considered in determining whether plaintiff was guilty of a crime in selling the property, and therefore in determining whether the prosecution was malicious and without probable cause, and that, under the language of the statute, the intent of the mortgagor is wholly immaterial, the sole question to be considered in determining whether the

1. SALE of mortgaged property: written consent: oral permission: evidence.

statute has been violated being whether there has been a sale without written consent previously given.

We are not willing to adopt the construction of the statute contended for. It is true that statutes may be so framed as to make the doing of a prohibited act punishable as a crime, without regard to the intent or circumstances. At least, such a proposition is frequently stated; and we are content for the present to accept it, although we must confess a doubt as to whether, if there was evidence tending to show that the person doing the prohibited act was insane or acting under compulsion, it would still not be for the jury to say, in prosecutions under such statutes, whether the defendant actually entertained what in law is denominated a criminal intent. But such statutes, so far as they have come before the courts for interpretation, have uniformly been in the nature of police regulations, having for their purpose the prevention of acts such as the selling of intoxicating liquors, the running of gambling houses, and the like, which the legislature has seen fit to stigmatize as inimical to the public welfare, and has therefore endeavored to prevent by proper legislation. In these statutes the legislature has had in contemplation, not the prevention of acts injurious to the person or property of individuals, and therefore in general contrary to public policy, but acts regarded as contrary to the public welfare, without particular reference to their injurious consequences to the safety of property and the person. The statute before us, however, relates primarily to the protection of the rights of mortgagees in regard to mortgaged property. It declares the prohibited acts to be larceny, and provides for their punishment as such; thereby bringing them within the general category of wrongs to private property. In the absence of any particular language in the statute itself, we would be inclined to hold that the same general principles with reference to criminal intent would be applicable under this statute as under other statutes calculated to

afford security to property, and that a criminal intent in doing the prohibited act would be an essential ingredient of the crime. The language of the statute re-enforces this idea, for the provision is that a mortgagor who will-fully sells mortgaged property without the written consent of the holder of the mortgage shall be guilty of larceny. The word "willful" has, perhaps, no very well established meaning, and is to be construed in different statutes in somewhat different senses, depending on the connection in which it is used; but in such connection as this it certainly implies a determination to do the prohibited act with a bad intent and without justifiable excuse. *Felton v. U. S.*, 96 U. S. 699 (24 L. Ed. 875); *Potter v. U. S.*, 155 U. S. 438, 446 (15 Sup. Ct. Rep. 144, 39 L. Ed. 214); *State v. Preston*, 34 Wis. 675; *Gulvin v. Mill Co.*, 98 Cal. 268 (33 Pac. Rep. 93); *State v. Massey*, 97 N. C. 465 (2 S. E. Rep. 445); *Railroad Co. v. Nash*, 1 Ind. App., 298 (24 N. E. Rep. 884); *Com. v. Kneeland*, 20 Pick. 206, 220.

This was the view taken by this court in *Walker v. Camp*, 69 Iowa, 741, in construing the statutory provision then in force with relation to the sale of mortgaged prop-erty, the court saying: "The seller of the mortgaged property is not to be convicted therefor without a criminal intent. If the consent is such, in whatever way it may be given, that the seller honestly believes that he is author-ized to sell the property, his honest act cannot be con-verted into a criminal one by a technical rule of evidence, framed for the protection of civil rights." This language was used in answer to the contention in that case that a consent given before the mortgage was executed, and not embodied in the mortgage, could not be shown for the purpose of negativing criminal intent on the part of the mortgagor in making a sale which was without any consent given after the mortgage was executed.

Counsel insist, however, that this case is no longer pertinent, in view of a subsequent change of the statute,

consisting solely in the introduction of the word "written,"
which was made by chapter 50, Acts 25th General Assem-
bly, the statute which was under consideration in the
case of *Walker v. Camp* being retained, with this change
in the present Code as section 4852, above quoted. We
think, however, that the introduction of the word "written"
does not render inapplicable the reasoning of the court
used in that case. If it had been intended by the legisla-
ture to make criminal intent immaterial as an element of
the crime described, such intention would have been evi-
denced by some change in the language pertinent to the
interpretation which the court had already put upon the
statute. A written consent, given before the execution
of the mortgage, and not embodied therein, would have
been just as inadmissible, according to the rules of evi-
dence in civil cases, as a protection to the mortgagor sell-
ing the property after the execution of the mortgage, as
similar evidence of oral consent. So far as we can see,
there is nothing to show a legislative purpose to nullify or
render inapplicable the conclusion of the court in that
case. We cannot believe that the legislature intended to
say that, mortgagor, who, by the express oral direction of
the mortgagee and in his very presence, or with his ex-
press knowledge and approval, should make a sale of the
mortgaged property with the good-faith purpose and
understanding that the proceeds should be paid over to the
mortgagee, and credited on the indebtedness, would thereby
commit a crime for which, if the property exceeded $20 in
value, he might be sentenced to imprisonment in the
penitentiary. Such a conclusion would be so abhorrent to
any conception of justice which we are able to entertain
that it would take very definite and unequivocal language
to justify it.

There was evidence in this case which would warrant
the jury in finding that the sales of the mortgaged prop-
erty made by the plaintiff were with the approval of the

defendant, previously given; and we think that the court properly left it to the jury to say whether the plaintiff, in making the sales, honestly believed that he had authority from the defendant to do so, by reason of consent of defendant thereto, even though not in writing, and that such honest belief on the part of the plaintiff, if it existed, should have been taken into account by defendant in determining whether he had probable cause for commencing the prosecutions.

We need not further discuss the assignments of error as to the giving and refusal of instructions, so far as they relate to this matter, for the whole burden of complaint in this respect is founded on the contention (which we find to be unwarranted) that no oral consent of the mortgagee, and no honesty of belief on the part of the mortgagor founded upon any such consent, would relieve the mortgagor from criminal liability for selling the mortgaged property.

Complaint is made of the action of the trial court in sustaining objections to questions, asked of a witness who had been consulted as counsel with reference to instituting 2. EVIDENCE: conversations with county attorneys. the criminal prosecutions, with relation to his having submitted the matter to the county attorney; but what counsel may have said to the county attorney, or what the county attorney may have said to counsel, was wholly immaterial. The county attorney was not counsel for this defendant in instituting the criminal proceedings, and therefore defendant was not justified in relying, if he did rely, on any advice or suggestion thus given.

Other assignments of error with reference to the admission or exclusion of evidence are argued, but they are not of sufficient importance to justify discussion in this opinion.

The interrogatories asked in behalf of defendant and refused, were not such as to call for answers which would have been determinative of the case, and therefore the ruling of the trial court in this respect was correct.—AFFIRMED.