STATE OF IOWA, Appellee, v. C. T. GIBSON, Appellant.

**CHATTEL MORTGAGES:** Unlawful Sale—"Holder" Defined. The
1   payee of a promissory note secured by chattel mortgage does not cease to be the "holder" thereof, within the meaning of Sec. 13037, Code of 1924, by depositing the same with a bank, with the reserved power to repossess himself of said note at any time.

**CHATTEL MORTGAGES:** Unlawful · Sale—Oral or Good-faith Sale.
2   Under an indictment for the unlawful sale of mortgaged chattels, the accused is privileged to show that his sale was in good faith and under the *oral* direction of the mortgagee, or with the knowledge and approval of the mortgagee or his agents.

**CRIMINAL LAW:** Instructions—Joining Separate Defensive Matters
3   by "and." The evident attempt of the court to tell the jury that an accused must be acquitted if there is a failure of proof on any *one* of a series of matters is wholly defeated when the said different matters are connected with the conjunction "and;" and this is true even though other parts of the instructions are to the contrary.

Headnote 1:   11 C. J. p. 643 (1926 Anno.)   Headnote 2:   11 C. J. p. 641.   Headnote 3:   11 C. J. p. 646; 16 C. J. p. 986.

*Appeal from Union District Court.*—A. R. MAXWELL, Judge.

FEBRUARY 10, 1925.

DEFENDANT was indicted and convicted for the crime of selling mortgaged property without the written consent of the mortgagee, as defined by Section 13037, Code of 1924. From

the judgment entered on the verdict, defendant appeals.—*Reversed.*

C. T. Gibson and R. Brown, for appellant.

Ben J. Gibson, Attorney-general, Herbert A. Huff, Assistant Attorney-general, and C. L. Carroll, County Attorney, for appellee.

DE GRAFF, J.—The indictment in the instant case is predicated on Section 13037, Code of 1924, which reads:

"If any mortgagor of personal property * * * while the mortgage * * * upon it remains unsatisfied, willfully and with intent to defraud * * * in any manner disposes of the property covered by such mortgage * * * without the written consent of the then holder of such mortgage * * * he shall be guilty of larceny."

The pertinent questions, under the allegations of the indictment, and as embodied in the instructions of the court, are: (1) Did the defendant execute and deliver a chattel mortgage upon certain cattle described in the indictment, to the Stock Yards National Bank of South Omaha, Nebraska, to secure an indebtedness owing by the defendant to said bank? (2) Was the said mortgage, at the time charged in the indictment, to the knowledge of the defendant a valid and subsisting chattel mortgage and lien upon said cattle so described? (3) Did the defendant willfully, and with intent to defraud the said bank, sell or otherwise dispose of the cattle covered by the said mortgage? (4) Was the Stock Yards National Bank of South Omaha the then holder of said mortgage? (5) Was any written consent ever given by the said bank to the defendant to sell or in any manner dispose of said cattle? (6) Was the said bank defrauded in some amount of money or property? (7) Was the value of the cattle so mortgaged and sold, more than $20?

The facts disclose that, on or about October 25, 1923, the defendant purchased from Krebbs & Company, cattle dealers of Omaha, 75 head of cattle, and at the same time purchased 31 head from John C. Krittenbrink, who was then acting as a sales

agent for the company. In the settlement of the transaction, a loan was negotiated with the Stock Yards National Bank of Omaha, in the sum of $7,028.07; and as evidence thereof, a note secured by chattel mortgage was executed· by the defendant in said amount, and delivered to the bank. A cashier's check was issued to the defendant, who indorsed and delivered same to the cattle company, in payment for the cattle so purchased. The mortgage covered the 106 head, and was duly entered of record in Union County, Iowa. Shortly thereafter, the cattle purchased directly from the company were shipped to the defendant, and taken to his farm for feeding. The stock secured from Krittenbrink were then at pasture on the Gibson farm in Union County. At the time of the sale of the 31. head by Krebbs & Company to Krittenbrink, a mortgage for the purchase price was executed and delivered to the company by the latter; but, .shortly after the sale of all the cattle to the defendant, the Krittenbrink mortgage was released of record. Subsequently, the defendant tried to purchase more cattle from the Omaha company, but was told that his note was not satisfactory, and that further sales would be made to him only upon additional security. On December 2, 1923, the defendant shipped all the mortgaged cattle to the Burlington Livestock Commission Company, at Kansas City, Missouri, where they were sold by that company. The commission company, before payment, made inquiry of the defendant if there was a mortgage on the cattle, to which he replied in the negative. Thereupon, investigation was made by the company, and it was learned that there was a mortgage on the cattle; and the Stock Yards National Bank was notified of the sale. Instructions followed to hold the fund until further orders. The defendant had previously directed that the proceeds, in the sum of $5,772.75, be forwarded to his account at the Farmers & Merchants Savings Bank of Creston, Iowa; but, as a matter of fact, the money was eventually turned over to the bank at Omaha, upon the filing of an indemnity bond. The instant indictment was the sequel of the transactions related herein.

With the issues as stated, and the primary facts as outlined, we naturally inquire, upon what propositions does the appellant predicate reversible error? The primary contention

1. CHATTEL MORT-
GAGES: unlawful
sale: "holder"
. defined.

had to do with the sufficiency of the evidence to sustain the allegation of the indictment that the personal property so mortgaged was sold "without the written 'consent of the then mortgagee." The crime charged is denominated "larceny," by the statute. Ownership, therefore, must be alleged and proved. It is an essential ingredient. Does the evidence establish this material element beyond a reasonable doubt? The proof offered by the State in this particular is uncontradicted. It is shown that the mortgage in question was never assigned or transferred by the mortgagee to any person, and that the said bank, at the time of the sale of the cattle by the defendant, was in possession of said mortgage, and asserted ownership therein. It is the claim of appellant, however, that the note secured by the mortgage had been assigned by the mortgagee bank to the Federal Reserve Bank, prior to the sale of the cattle, and that in law this constituted an assignment of the mortgage. It must be conceded that the assignment of a note secured by mortgage carries the mortgage with it. *Robertson v. Stock Co.,* 164 Iowa 230. Does the evidence sustain defendant's interpretation of the facts? We think not. True, the note was placed with the Federal Reserve Bank, but the evidence falls far short of proving an assignment. The note was deposited with the Federal Reserve Bank, with the reservation and condition that the Stock Yards National Bank had the privilege of withdrawing it at any time. The title to the note was not transferred, and it is quite evident that the note was indorsed and delivered to the Federal Reserve Bank for a special and limited purpose only. The ownership thereof remained in the mortgagee bank, and it was its privilege to retake possession upon demand. This was the understanding and agreement between the two banks; and in fact, about the time that the cattle were sold by defendant, the note was returned to the mortgagee, upon its request. Under these circumstances, a fact question was presented, and we are not inclined to disturb the finding that the Stock Yards National Bank, as mortgagee, was "the then holder" of the mortgage, in fact and in law.

It is also contended that the evidence bearing on the intent to defraud, as alleged in the indictment, is not established be-

yond a reasonable doubt. It is the claim of appellant that in this deal Krebbs & Company was the agent of the Stock Yards National Bank, and that the cattle were shipped with the knowledge, consent, and assistance of Krittenbrink, as agent of Krebbs & Company. The record does not sustain this view of the situation. The relation of the cattle company to this transaction terminated when it received full payment for the cattle purchased by the defendant. The defendant became the owner of the cattle; the bank, as mortgagee, became a lien holder. The defendant was privileged to prove that the cattle were sold under the oral direction of the mortgagee, or with the knowledge and approval of either itself or its agent; and this evidence would constitute defensive matter, as bearing on the criminal intent as charged. As said in *Walker v. Camp*, 69 Iowa 741:

*2. CHATTEL MORT-GAGES: unlawful sale: oral or good-faith sale.*

"If the consent is such, in whatever way it may be given, that the seller honestly believes that he is authorized to sell the property, his honest act cannot be converted into a criminal one by a technical rule of evidence, framed for the protection of civil rights."

Again, in *Kletzing v. Armstrong*, 119 Iowa 505, it is said:

"We cannot believe that the legislature intended to say that mortgagor who, by the express oral direction of the mortgagee, and in his very presence, or with his express knowledge and approval, should make a sale of the mortgaged property with the good-faith purpose and understanding that the proceeds should be paid over to the mortgagee and credited on the indebtedness, would thereby commit a crime."

The rights of the defendant were carefully guarded by the court in this particular, since the jury was told that, if the defendant gave actual notice to the Stock Yards National Bank, or its officers or agents, of his intention and purpose to sell or dispose of the cattle covered by the mortgage, "this fact shall be considered, and all the conditions and circumstances in connection therewith," in determining the intent of the defendant in selling the cattle and whether the defendant intended to defraud the said bank. Further:

"Unless you find that Krebbs & Company, or a member of said firm, was the officer or agent of said bank at the time such

notice, if any, was given to said bank, or its officers or agents, by the defendant, then notice to Krebbs & Company, or a member of its firm, would not be actual notice to said bank of defendant's intention to sell or dispose of the cattle covered by the mortgage and described in the indictment.''

The question, therefore, was purely one of fact; and it was the province of the jury to accept or reject the claim of the defendant with respect to notice to any person, firm, or corporation in regard to the proposed sale of the cattle. As indicated, these matters were properly left to the jury; and it was for the jury to determine, in the light of all the evidence, whether the sale of the cattle was made by the defendant on an honest belief that he had authority so to do, by reason of consent and approval of the then holder of the mortgage or its agent.

Error is based on the language of an instruction bearing on the intent of the defendant, in that, in summarizing the essential elements of the crime charged, the trial court used the conjunctive ''and,'' instead of the disjunctive ''or.'' The court previously instructed the jury on the essential elements to warrant a conviction, and, in stating the negative of the proposition, said:

3. CRIMINAL LAW: instructions: joining separate defensive matters by "and."

''If you find that the Stock Yards Bank was not actually defrauded in any amount by the willful acts of the defendant, and that he had no intent to defraud, and that the said mortgage was satisfied, and that the bank was not the then holder of said mortgage, and that the defendant had the written consent of said bank to sell the mortgaged property, then you will acquit the defendant.''

This instruction is clearly erroneous. Its language is susceptible of but one interpretation; and the jury could give it but one meaning. The acquittal was not made dependent upon failure to prove any one of the essential elements, but upon the failure to prove several of the essentials, as recited therein. True, the court, in a prior instruction, told the jury that a failure on the part of the State to prove beyond a reasonable doubt any one of the essential ingredients of the indictment entitled defendant to an acquittal; but the language of the instruction quoted was in direct conflict therewith. The language of the two

instructions cannot be harmonized. In effect, the challenged instruction charges the jury that, before the defendant is entitled to an acquittal, it must find five separate propositions in his favor. This is not the law of the case.

In conclusion, brief notice may be given to the admission in evidence, over objection, of certain correspondence which passed between the mortgagee bank and the commission company that sold the cattle, as agent of the mortgagor. These letters were clearly incompetent and hearsay; although the primary subject-matter of the letters is found in the record independently of the correspondence, with one exception, which we specifically note. In a letter from the cashier of the Stock Yards National Bank of Omaha to the manager of the commission company of Kansas City, it is said:

"In order that we may have all the evidence available to put this fellow, who appears to be a crook of the worst type, behind the bars, it will be necessary for you to act as a witness."

The defendant was not a witness upon the trial; and the admission of this derogatory statement was a direct impeachment of the reputation and character of the defendant, and clearly prejudicial.

For the reasons herein expressed, the judgment entered must be and is—*Reversed.*

FAVILLE, C. J., and STEVENS and VERMILION, JJ., concur.