HARRY E. HEPKER, Appellee, v. JOHN A. SCHMICKLE, Appellant.

No. 40004.

FEBRUARY 11, 1930.

*Elmer A. Johnson* and *John D. Stewart*, for appellant.

*Crissman & Linville* and *David Bleakley*, for appellee.

KINDIG, J.—The plaintiff-appellee, Harry E. Hepker, in his petition filed February 24, 1928, charged that, through a malicious prosecution, the defendant-appellant, John A. Schmickle, caused the former damages in the sum of $5,000. In addition thereto, the appellee asked $3,000 punitive and exemplary damages. Said malicious prosecution is based upon an information signed by the appellant before A. Deforest, justice of the peace in Otter Creek Township, Linn County. That information charged that the appellee, on February 15 and May 4, 1927, committed larceny by selling and disposing of mortgaged cattle without appellant's consent or knowledge. Basis for such prosecution is found in Section 13037 of the 1927 Code, which reads:

"If any mortgagor of personal property * * * while the mortgage * * * upon it remains unsatisfied, willfully and with intent to defraud * * * sells, or in any manner disposes of the property covered by such mortgage * * * without the written consent of the then holder of such mortgage * * *, he shall be guilty of larceny and punished accordingly."

Appellee was arrested under the information, furnished an appearance bond, waived preliminary hearing, and was bound over to the grand jury. After an investigation, the grand jury refused to indict. Then the present proceeding was commenced, as aforesaid.

This controversy arose over a mortgage given by appellee and his wife May 15, 1926, at the Alburnett Savings Bank to appellant, for the purpose of securing $1,425. Twenty-three head of cows and two calves, "as well as all increase and substitutions," constituted the security covered by the mortgage. Both appellee and appellant were farmers living in Otter Creek Township. Preparation of the mortgage was made by a bank cashier. At that time, appellee claims, the appellant gave his

permission for the sale or substitution of the cattle mortgaged, provided the sale proceeds were delivered to the latter. Accordingly, sales and substitutions were made, but in each instance where any of this live stock was sold, the money received therefor was paid to appellant.

On the other hand, appellant maintains that he did not consent to said sales or substitutions, and that if, in any event, such permission to sell was given, it was afterwards revoked, and therefore the appellee's acts in disposing of the security were unlawful and felonious.

Because the jury adopted appellee's version of the facts, and the district court entered judgment on the verdict rendered, the appellant complains. Many errors are assigned and argued, which will be given attention in the proper order.

I. Appellant contends at the outset that, even though he did not actually know the appellee was guilty of larceny, yet the facts and circumstances were such as to present probable  cause for his believing so. Therefore, appellant insists there should have been a directed verdict in his favor because the facts relating thereto "were so clearly proved that there was no issue upon which the jury had a right to pass." Concerning probable cause, and the duty of the court or jury in reference thereto, we said, in *Dickson v. Young,* 208 Iowa 1:

"Probable cause has been defined as the knowledge by the prosecuting witness of such a state of facts as would lead a man of ordinary caution and prudence, acting conscientiously, impartially, reasonably, and without prejudice, to believe that the person accused is guilty. The question of probable cause may be one of law or one of fact. If the evidence shows conclusively that the prosecution was begun with probable cause, the question is one of law, and a verdict should be directed for the defendant."

For supporting authority, see *Granteer v. Thompson,* 203 Iowa 127.

Does the evidence here show conclusively that the prosecution was begun with probable cause? We think not. As previously stated, the grand jury refused to indict, and the de-

fendant was dismissed. Apparently, however, the district court, in submitting the cause to the jury, did not tell them that defendant's discharge could be considered as a presumption in favor of non-probability. Whether, under the facts in this case, that failure was an error, we do not now decide or suggest. Upon the general subject, however, see *Hidy v. Murray*, 101 Iowa 65; *Wilson v. Lapham*, 196 Iowa 745. Also, compare *Philpot v. Lucas*, 101 Iowa 478. No decision or intimation is made, either, as to whether the presumption can be considered on the question of a directed verdict, even though the court did not, after overruling the motion, submit that particular issue to the jury. This proposition is not argued, and, under the circumstances, we find it unnecessary to discuss the subject. The problem, then, as thus narrowed, involves only the sufficiency of appellee's evidence to raise a jury question. It is admitted by appellee that, with the exception of one cow, he sold and exchanged the cattle named in the mortgage; but at all times, he contends, such sales and exchanges were made with the appellant's knowledge and consent. Moreover, appellee claims that the proceeds of each sale, whether of the original or substituted securities, were, in each instance, delivered to the appellant. Consistent with this claim, it appears that indorsements of all moneys thus received by appellant were made by him upon the note for which the security was given. What has been said concerning the sale proceeds from the original and substituted securities applies with equal effect to the calves from the mortgaged cows, which are the increase contemplated by the mortgage. These calves were sold, but the consideration received therefor was always delivered to the appellant.

There was a balance due on the note after applying the proceeds from the aforesaid sales; and on May 21, 1927, the appellee and the appellant agreed that the two remaining cows could be kept by the former, provided that he paid, through a local bank, $50 per month from his cream checks until the note was fully satisfied. Accordingly, appellee left a check at the bank aforesaid, payable to the appellant, in the sum of $50. Notification thereof was duly given the appellant, but he did not call for the check; and in about ten days, the bank closed for insolvency, and a receiver was appointed therefor. Credit

was never given the appellee for said $50. Later, however, those remaining two cows were sold at public auction for $126.50, which sum was delivered to the appellant. One of the cows covered by the mortgage died. Hence, if appellee's claim in this respect is adopted as a fact, the jury were justified in finding there was no probable cause for appellant's belief that the security was feloniously sold or exchanged.

Ground upon which appellant bases probable cause is found, generally speaking, in three transactions: First, appellant asserts that he had no knowledge concerning appellee's shipment of four cows and eleven calves to Chicago in December, 1926, until after the arrest. But, regardless of that claim, a draft for these cattle was sent to the Alburnett Savings Bank, to appellant's credit, and indorsement thereof made upon the note. By way of explanation, the appellant says that he knew about the credit, but did not understand the source thereof. Therefore, appellant insists that, on November 29, 1927, when he swore out the information, he had no knowledge concerning the whereabouts of said four cows and certain calves. All the other cows had been accounted for at that time; but appellant claims that, before the information was sworn out, he had a conference with appellee concerning the whereabouts of said remaining four cows. Thereupon, appellee is alleged to have said that the 19 cows and certain calves, about which appellant knew, constituted all the security. Resultantly, appellant maintains that, in view of appellee's alleged prevarication regarding the number of cows, and the other circumstances just related, there was probable cause. In contradiction of appellant's statements relating to lack of knowledge, appellee declared that, before the particular sale here under consideration, he conferred with the mortgagee about the shipment of.the four cows and calves above mentioned, and gave full information concerning the same. Furthermore, appellee testified that appellant at all times knew about the location and condition of the security, and that the parties were neighbors; yet appellant made no investigation of the chattels on appellee's farm. A conflict of evidence arose upon this disputed subject, and thereby a jury question was presented.

Second, appellant says that, in February, 1927, the appellee sold 14 cows to Vernon Ritze for $658.60. Said sale,

appellant maintains, was against his express instructions, and contrary to urgent objections. Sometime after the sale, a replevin suit was instituted by appellant, and the stock recovered by him. Soon thereafter, appellant sold these particular cattle for $700, but gave appellee credit for only $658.60, the amount named as a consideration in the first sale. Appellant argues that the foregoing circumstances, together with the matters set out in relation to the four cows described just above, were sufficient to present a probable cause for the institution of the criminal prosecution. On the other hand, appellee and others testified to a different state of facts. Explaining this sale of the 14 cows, appellee insists that he was acting under the general authority given by appellant at the time the mortgage was originally executed. Evidently the sale had been made, and appellee was in the process of delivering the cattle to the purchaser when the appellant came on the premises, and said that the chattels should be replaced in the pen from which they had been taken. Complying with appellant's request, the appellee drove the cattle back into the yard. When doing so, however, he informed appellant that he had no feed for them, and was without funds with which to buy more. Continuing in this regard, appellee offered the cattle to appellant for the consideration of $658.60, being the price Vernon Ritze was to pay for them, as before explained. Such offer was refused. Talk was then had between the parties concerning a shipment of the cattle to Chicago, but nothing materialized concerning this. Because appellant said he did not ''want the damn cattle,'' appellee apparently inferred that previous objections to the sale were removed; and when Vernon Ritze, the purchaser, made threatening demands for the stock, appellee permitted him to have them, for the agreed consideration of $658.60. Check therefor was drawn by Ritze to appellant. Refusal thereof, however, was made, and, as before explained, the property was replevined. Apparently appellant refused to let Ritze have the cattle under the sale agreement with appellee because appellee at that time was not in a position to pay the balance due on the note. Following the incidents just described, including the said stock's sale and delivery, appellant then came to appellee and asked that a bill of sale be executed, conveying the cattle to the former. Refusal was made by appellee because the

property had already been sold, as previously indicated. Still later in the negotiations after the replevin suit, appellant and appellee apparently agreed on the disposition to be made of all the mortgaged chattels. Those facts are to be considered with appellant's attitude at the time the warrant was sworn out. At that time, appellant informed the justice of the peace that appellee owed him money, and remarked that, if such money were paid, he would "drop the prosecution." Likewise, appellant told the constable that, if appellee paid the amount due, there would be no further prosecution. Manifestly, a jury question was presented concerning appellant's probable cause in the premises, and that body found for appellee. Wherefore, this court cannot interfere with the result.

Third, appellant maintains that appellee was told not to substitute securities, and that, because the same was done, probable cause arose, justifying the information. Replying to that argument, appellee asserts that originally he had express authority to make substitutions, and that, acting thereunder, he did substitute three cows for two, plus $25. The $25 was paid by appellee himself. Upon that occasion, appellant demanded that no further substitutions be made, and in compliance with that request, appellant made no more. Justification of appellant's actions, therefore, does not appear here.

These three sets of facts just discussed, therefore, when considered with the entire record and all the circumstances involved, did not give rise to a situation where a directed verdict would have been proper.

II. Next, it is said by appellant that there should have been a directed verdict because he acted under advice of counsel. Under proper circumstances and conditions, such advice  will absolve one from liability for malicious prosecution. *Wilson v. Lapham* (196 Iowa 745), supra; *Granteer v. Thompson* (203 Iowa 127), supra; *White v. International Textbook Co.*, 144 Iowa 92. In the *Granteer* case we declared:

"Under the rule in this state, the advice of counsel, obtained in good faith, upon a fair and full disclosure of all of the facts in possession of a party, is a complete defense to an action for malicious prosecution."

To the same effect, in *Wilson v. Thurlow*, 156 Iowa 656, we announced:

"Advice of an attorney, to constitute a good defense, must be based on a full and fair statement of the facts within defendant's knowledge, and the advice must have been acted on in good faith, and with the belief that there was good cause for the prosecution * * *."

With the facts before him, as enumerated in the above discussion, appellant consulted the county attorney of Linn County, who advised that appellant should proceed slowly; that much doubt existed concerning a criminal liability; and that the matter should be submitted to the grand jury. Reliance, however, is made by appellant upon the advice of his personal attorney, Mr. Smith, who, appellant alleges, opined that appellee had committed a crime. Notwithstanding that, it is very clear that appellant did not disclose to Mr. Smith all the facts and circumstances material to a conclusion on the subject. For instance, appellant did not reveal to this attorney his consent for the things done by appellee, nor was information given to the legal counselor concerning the various indorsements upon the note as a credit for the proceeds resulting from the sale of this stock. Hence, if the jury found it to be a fact that the appellant gave his consent to the sales aforesaid, then, it being a fact, such subject-matter should have been communicated to Mr. Smith, under the circumstances.

Two grand jury terms passed by before the arrest was made, and even then, as above related, appellant told the justice of the peace and the constable that a settlement was desirable, and that the prosecution would end if such result were accomplished. So, then, under the authority above cited, this question, together with the one concerning appellant's consent to the sales, was properly submitted to the jury.

III. Again, complaint is made by appellant because the county attorney testified on appellee's behalf. Basis for this complaint is founded upon Section 11263 of the 1927 Code, which reads:

"No practicing attorney, counselor, * * * who obtains such information by reason of his employment, * * * shall be allowed, in giving testimony, to disclose any confidential communication

properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline. Such prohibition shall not apply to cases where the party in whose favor the same is made waives the rights conferred.''

During the testimony of the county attorney, no objection whatever was made by the defendant, although he and his counsel were present, conducting the defense in this case. Having  thus permitted the witness to testify, without exception thereto, the appellant is not in a position now to complain of the evidence. 28 Ruling Case Law 545, Section 134; *Burgess v. Sims Drug Co.*, 114 Iowa 275 (local citation 280). See, also, *Hull v. Hull*, 117 Iowa 738; *Amidon v. Snouffer*, 139 Iowa 159 (local citation 162); *Burdick v. Raymond*, 107 Iowa 228.

IV. Complaint also is made because the trial court permitted appellee and his wife to testify that appellant orally consented to the sale of the cattle. This, appellant asserts, amounted to varying the terms of the written mortgage, contrary to the law applicable. A result of the evidence was not in any way to vary or impair the terms of an existing contract, but rather, the purpose and effect thereof were the avoidance of a criminal liability, under Section 13037, supra, before quoted.

We have previously determined this question contrary to appellant's contention. *State v. Gibson*, 199 Iowa 377 (local citation 381); *Walker v. Camp*, 69 Iowa 741; *Kletzing v. Armstrong*, 119 Iowa 505, 509. Contained in our discussion in the *Gibson* case is the following language:

"The defendant was privileged to prove that the cattle were sold under the oral direction of the mortgagee, or with the knowledge and approval of either itself or its agent; and this evidence would constitute defensive matter, as bearing on the criminal intent as charged. As said in *Walker v. Camp*, 69 Iowa 741: 'If the consent is such, in whatever way it may be given, that the seller honestly believes that he is authorized to

sell the property, his honest act cannot be converted into a criminal one by a technical rule of evidence, framed for the protection of civil rights.' Again, in *Kletzing v. Armstrong,* 119 Iowa 505, it is said: 'We cannot believe that the legislature intended to say that mortgagor who, by the express oral direction of the mortgagee, and in his very presence, or with his express knowledge and approval, should make a sale of the mortgaged property with the good-faith purpose and understanding that the proceeds should be paid over to the mortgagee and credited on the indebtedness, would thereby commit a crime.' "

V. Continuing his exceptions, appellant objects because the witnesses were permitted to enumerate the members of appellee's family who were present at the time he was arrested.  Such evidence, it is asserted, conflicts with the rule announced in *Bascom v. Hoffman,* 199 Iowa 941. That case, however, involved an action for personal injuries. Elucidation will be found in the quotation of a single sentence:

"It [such evidence] could only serve one purpose, which was evidently the purpose of the plaintiff in offering the testimony, and that was to arouse the passion and sympathy of the jury, and thereby enhance plaintiff's damages."

Before us, however, is not an ordinary action for personal injury, but a proceeding seeking a recovery on the ground of a malicious prosecution. Necessarily, then, a different rule of evidence applies. Relating to this particular subject, we said, in *Flam v. Lee,* 116 Iowa 289 (local citation 292):

" * * * the principal basis of recovery in most actions of this kind is mental suffering and anguish arising from the wrongful charge and arrest, and, if the arrest be made in the presence of one's family or friends, bringing him into shame and humiliation before them, it is a proper matter to be considered as bearing upon the pain inflicted upon him."

While in that case the plaintiff's mother had fainted, and it was attempted to show this fact at the trial, yet the general principle is the same, when applied to the facts before us. Obviously, the shame and humiliation would be greater if appel-

lee's arrest were made in the presence of his wife and children. No error appears at this point, therefore.

VI. Mistake is said to have been made by the trial court because certain facts concerning the replevin suit were excluded from the record. Admission was made of such testimony and record concerning that case as were material, and consequently appellant was not prejudiced in any way.

VII. Insistence is made by the appellant that the court erroneously defined "probable cause." When formulating a definition for the jury, the trial court defined for that body  "want of probable cause." Although it would have been more regular to have put the definition in an affirmative, rather than a negative, form, yet the instruction contained all the necessary elements to meet the requirements.

VIII. General complaint is made by appellant because the district court permitted the jury to find elements of damage not contained in the petition. A careful study of the instructions, however, indicates that the court merely used synonymous terms, or a different method of expressing the same thought as that contained in the petition; and, under the circumstances, the appellant was not prejudiced.

IX. The charge is made that the instructions are unfair and partial, in that undue emphasis is placed upon appellee's theory, to the disparagement of appellant's defense. Our careful consideration has been given to the instructions in this regard, however, and we find that appellant's complaint is without merit; for, when read as a whole, the instructions are as fair to one party as to the other.

X. Grievance is predicated upon the proposition that the trial court included within its instructions, as an element of damage, the appellee's "physical anguish." It appears that  this particular ground of damages was not named in the petition, and therefore it should not have been submitted to the jury. There are contained within the instruction, however, the qualifying words "if any." Evidence in support of this particular item of damages was entirely lacking. Under the circumstances, therefore, the appellant was not prejudiced. *White v. International Text Book Co.*, 164

Iowa 693; *Lamb v. City of Cedar Rapids,* 108 Iowa 629; *Trumble v. Happy,* 114 Iowa 624. In the *Lamb* case, we said (local citation 635):

"It is further insisted that the paragraph [of the instruction] was erroneous in directing the jury to 'consider * * * the expenses, if any, for nursing,' for the reason that the evidence did not show that the plaintiff incurred any expense for nursing, nor that the services rendered were of any value. * * * We think it was erroneous in referring to expenses for nursing, but that, in consequence of the limited words 'if any,' and the character of the testimony respecting such expenses [the item was not proven], the error could not have been prejudicial."

Consistently therewith, we stated in the *White* case, supra (local citation 696):

"It is also contended that the instruction is erroneous in that there was no * * * claim in the petition for loss of time. As to loss of time, the qualification in the instruction by the use of the words 'if any' cured the defect."

XI. Another phase of this subject, however, is more serious. Within its instructions, the court included the charge directing the jury to allow appellee for attorney fees and loss  of time. Grounds for the recovery of those items were not laid in the petition, and because thereof, the matter should not have been submitted to the jury. Nevertheless, the grand total of expenditures for attorneys' fees and damages for loss of time does not exceed, under the evidence, $115. If the appellee, therefore, within 30 days after this opinion is filed with the clerk of this court, shall file with the clerk of the district court his remittitur to that extent, and furnish evidence thereof to the clerk of this court, then the judgment of the district court will be affirmed; otherwise, reversed.

Other matters are argued, but they are not of sufficient importance to warrant further consideration.

Wherefore, the judgment of the district court is affirmed on condition.—*Affirmed on condition.*

MORLING, C. J., and EVANS, FAVILLE, and ALBERT, JJ., concur.