Allen, J.
 

 The defendant, T. O. Redd, was a member of a partnership engaged in the business of selling new and used automobiles at Ashley, Delaware county, Ohio. The partnership was known as Redd Motor Sales, and the members were the defendant and his brother, Foy Redd. On or about January 28, 1929, the partnership applied to the Commercial Credit Company for financial assistance in the purchase of a new Overland coach which the Redd Motor Sales desired to obtain from the Willys-Overland factory in Toledo, Ohio. The Commercial Credit Company advanced to the partnership the sum of $389.07, and took as security therefor a promissory note and a chattel mortgage in the usual form; both the note and the mortgage being signed “Redd Motor Sales By T. O. Redd, Partner.” The partnership had theretofore purchased various other cars in a similar manner, with the financial assistance of the Commercial Credit Company, giving the credit company chattel mortgages upon such cars, and paying off the mortgages after sale of the cars.
 

 This particular chattel mortgage contained the following provisions:
 

 “The mortgagor * * * will not sell, assign or dispose of any interest therein, operate (except to drive to mortgagor’s place of storage), use, ex-
 
 *164
 
 Mbit, demonstrate or remove the same from said place of storage, without the written consent of said mortgagee.
 
 * * *
 

 “The mortgagee will release any motor vehicle herein mortgaged upon payment by the mortgagor of the Release Price hereinbefore provided. * * *
 

 “The mortgagor shall not be the agent of mortgagee for any purpose whatsoever.
 

 “No waiver of performance of any of the conditions of this mortgage shall be deemed to have been given by the mortgagee unless in writing, signed by the mortgagee. This mortgage contains the entire agreement between the mortgagor and the mortgagee, and no verbal agreement shall be binding.”
 

 The defendant sold the car in question without the written consent of the mortgagee, became financially embarrassed, and payment was not made in accordance with the terms of the note and mortgage. He was thereupon indicted under Section 12476-1, General Code, for selling mortgaged property without the consent of the owner of the claim secured by the mortgage. At the trial of the case, both the defendant and the prosecuting witness described the chattel mortgage in question as a “floor-plan” mortgage. Ralph E. Blake, credit manager for the Commercial Credit Company, when questioned as to whether he called this a “floor-plan” mortgage answered, “That’s one term of it.”
 

 “Q. That’s one term applied to this particular mortgage? A. Yes, sir.”
 

 Blake then claimed that under a “floor-plan” mortgage the dealer, “when he gets ready to sell the, cars, he pays us first before the cars are sold;” but later he made the following statements:
 

 
 *165
 
 “Q. Mr. Blake, isn’t it a fact that it is common practice with your company to permit dealers to exhibit the cars before they are sold? A. On their floors.
 

 “Q. That is a violation of the mortgage, isn’t it? A. That’s in the warehouse, storage.
 

 “Q. I said that’s a violation of the terms of your mortgage that you make them sign, isn’t it? A. Yes, sir.
 

 “Q. Isn’t it a fact that to your knowledge they demonstrate those cars to prospective purchasers? A. No, sir.
 

 “Q. You say it isn’t? A. No, sir.
 

 “Q. Didn’t you testify here that to your knowledge Mr. Redd was demonstrating a car on one occasion when you were up there? A. I did.
 

 “Q. Then it is a fact that they do demonstrate them, isn’t it? A. Yes, sir.
 

 “Q. And isn’t it a fact also that in most cases the dealer sells the car, and immediately forwards the funds to you and pays off the mortgage? A. 1 couldn’t say. We receive our money as soon as the car is sold.
 

 “Q. As soon as the car is sold. Well then, that is the general practice, isn’t it? A. Yes, sir.”
 

 Blake testified that he personally gave no consent to the sale of the car, and no written consent was introduced.
 

 The record contains testimony as to the nature of the so-called “floor-plan” mortgage, and the court admitted testimony as to the general custom of automobile dealers in the selling of automobiles covered by the so-called “floor-plan” mortgages. In substance, the record shows that the “floor-plan” mort
 
 *166
 
 gage is used where the dealer cannot himself finance the purchase of the motor vehicle from the manufacturer, and is compelled to secure the backing of a finance company. The motor vehicle purchased from the manufacturer is placed upon the salesroom floor of the dealer after the dealer has given the finance company a chattel mortgage thereon, and is sold from such salesroom floor to the retail purchaser. It is the understanding of both parties that the vehicle is purchased for retail sale. In the ordinary course of business, the dealer upon sale thereupon.satisfies the mortgage held by the finance company. The court not only admitted the above testimony, but took judicial notice as to the operation of the “floor-plan” mortgage. The court also permitted Foy Redd, brother of the defendant, to testify that the Redd Motor Sales had sold several other automobiles upon which the Commercial Credit Company had mortgages, without the written consent of, and without first paying off, that company, previous to the transaction upon which this particular indictment was founded. The record contains two exhibits introduced on behalf of the defendant, namely, two checks, each drawn to the order of the Commercial Credit Company, one dated May 22,1928, for $789.11, and one dated November 15, 1928, for $446.22, each signed by Redd Motor Sales, by T. O. Redd, concerning which Foy Redd testified that these were payments made to the finance company subsequent to the sale of two certain automobiles in account upon the sale of those two particular cars. In connection with the latter check, a bill of sale was also introduced, dated November 14, 1928, a day prior to the date of the check, in which a Willys-Overland car,
 
 *167
 
 admitted by tbe parties to have been one of tbe machines purchased with the financial assistance of the Commercial Credit Company, was sold by Eedd Motor Sales to C. H. "Welch, of Marion, Ohio.
 

 It is urged on behalf of the prosecutor that evidence of a general custom is not admissible to vary the terms of an express contract. This is the general rule in civil cases. However, it is competent to show by extrinsic evidence that the parties to a written agreement have contracted upon a common basis of usage, applicable to the business in which the contract is made, whereby they have impliedly assented to certain conditions not mentioned in the contract.
 
 Swift’s Iron & Steel Works
 
 v.
 
 Dewey,
 
 37 Ohio St., 242;
 
 Beer
 
 v.
 
 Insurance Co.,
 
 39 Ohio St., 109;
 
 Thomas
 
 v.
 
 Guarantee Title & Trust Co.,
 
 81 Ohio St., 432, 91 N. E., 183, 26 L. R. A. (N. S.), 1210;
 
 Comstock Amusement Co.
 
 v.
 
 Opera Ball Co.,
 
 93 Ohio St., 46, 112 N. E., 150;
 
 National Savings Bank
 
 v.
 
 Ward,
 
 100 U. S., 195, 25 L. Ed., 621. However, the evidence questioned here was not admitted for the purpose of varying the contract. As we read the record, it was admitted upon the questions of fraudulent intent upon the part of the mortgagor and consent upon the part of the finance company.
 

 Section 12476-1, General Code, reads as follows:
 

 “Whoever, being a mortgagor of personal property, or being in possession thereof knowing it to be so mortgaged removes such mortgaged property or any part thereof, or causes the same to be removed without the state, or sells it or any part thereof within the state, without the consent of the owner of the claim secured by the mortgage, with intent to defraud the owner thereof, if the amount of the
 
 *168
 
 claim secured by the mortgage is thirty-five dollars or more, shall be imprisoned in the penitentiary not less than one year nor more than five years, or, if such value is less than thirty-five dollars, shall be fined not more than five hundred dollars or imprisoned not more than three months, or both.”
 

 Under this section of the statute, both the specific intent to defraud and lack of consent upon the part of the owner of the claim secured by the mortgage are required to constitute the crime of selling mortgaged personal property without consent. All of the elements necessary to make out a breach of civil contract were present, including the execution of the valid note and mortgage and the sale in Delaware county without the written consent of the owner and without the claim secured by the chattel mortgage being paid. Neither the intent to defraud nor lack of consent follows, however, as a matter of course from all of these circumstances. The intent to defraud and lack of consent have to be proved by the state beyond a reasonable doubt as one of the material allegations of the indictment. The defendant was entitled to set up the understanding surrounding the transaction, whether or not such understanding was consistent with the executed chattel mortgage, and similar previous dealings between himself and the prosecuting witness, for whatever weight they might have with the jury upon the question of the existence of fraudulent intent upon his part and consent by the finance company. It was relevant upon the questions both of intent and consent to show that the dealer, who had been unable to finance the purchase of the automobile from the manufacturer, had borrowed from the credit com
 
 *169
 
 pany and had taken the automobile for the purpose of selling it at retail, exactly as he had done in similar transactions with the same credit company before. A fair inference might arise in the minds of reasonable persons that the dealer, if he did not have money to buy the car, and if the credit company knew that he bought it for retail, could not pay off the mortgage before he sold the car and received the sale price from the purchaser. This might be peculiarly so under the present record which shows that these particular dealers had a limited business.
 

 “Authority to sell may be inferred, and such inference may arise from the terms of the mortgage itself. Thus, when the property mortgaged is stock in trade, or other property ordinarily used in the business of the mortgagor and for the purpose of carrying it on, the mortgage impliedly authorizes the mortgagor in possession before default to sell or exchange the property in the ordinary course of his business, and in some jurisdictions this is held to be the law nothwithstanding the mortgage forbids the sale or the removal of the property without the mortgagee’s consent.” 11 Corpus Juris, 626, citing
 
 Dedrick
 
 v.
 
 Ashdown,
 
 15 Can. S. C., 227;
 
 Walker
 
 v.
 
 Clay,
 
 49 L. J., C. P., 560.
 

 As succinctly stated in the latter decision:
 

 “The object of the bill of sale is obviously not to paralyze the trade of the grantor, but to enable him to carry on his trade, and the bill would be worthless if we were to construe it otherwise.”
 

 The court then goes on to state that “the covenant not to remove is a covenant that the grantor will not remove or dispose of the goods otherwise than in the ordinary course of his trade. ’ ’
 

 
 *170
 
 It is to be observed that tbe automobile in question in tbis case was disposed of in tbe ordinary course of trade. Tbe state makes no contention to tbe contrary.
 

 “Tbe statutes ordinarily make tbe absence of tbe consent of tbe bolder of tbe mortgage lien a necessary element. As a general rule consent may be proved by parol even tbougb it contradicts tbe terms of tbe mortgage.” 11 Corpus Juris, 641, citing
 
 Walker
 
 v.
 
 Camp,
 
 69 Iowa, 741, 27 N. W., 800.
 

 Since evidence of tbe prior dealings between these particular parties was introduced, and evidence appears in tbe record tending to show that tbe parties contracted with reference to tbe “floor-plan” mortgage system of financing such dealings, it was not prejudicial error to introduce evidence of tbe custom of dealing in automobiles covered by “floor-plan” mortgages, particularly when tbe manager of the credit company conceded that tbis was a “floor-plan” mortgage, and that bis company received its pay when the cars were sold. In view of tbe admissions of tbe prosecuting witness, we also find no prejudicial error in tbe fact that tbe court took judicial notice of tbe operation of tbe so-called “floor-plan” mortgage.
 

 Tbe court charged the jury that it was not necessary for tbe company to give a written consent before tbis property could be sold, and that, if tbe Commercial Credit Company, either by its conduct or method of doing business, consented to tbe sale, although not in writing, tbe jury could not find tbe defendant guilty. Tbe court charged that it was not necessary that tbe consent in tbis case be given in writing, and refused certain requested charges
 
 *171
 
 asked for by tbe prosecutor, based upon the breach of civil contract. The prosecutor’s main contentions are apparently grounded upon a theory of the case which views the alleged wrongdoing of the defendant as a breach of civil contract. Since this was a criminal prosecution under the statute, it was necessary to prove violation of the statute. Proof of violation of the mortgage contract did not of itself alone prove violation of the statute.
 

 The foregoing holding on the admissibility of testimony as to the necessity of establishing fraudulent intent and lack of consent, in order that the state might sustain the charge laid in the indictment, disposes of the objection and exception of the prosecutor to the charges of the court. The charges in question were not erroneous.
 

 Under Section 13681, General Code, the prosecuting attorney may except to a decision of the court and may present a bill of exceptions thereto, which the court shall sign, and it shall be made a part of the record. The purpose of this section is not to obtain a reversal of the judgment of the court in the case in which the bill is taken; its purpose is simply to determine the law to govern in a similar case.
 
 State
 
 v.
 
 Granville,
 
 45 Ohio St., 264, 12 N. E., 803. We do not, therefore, rule upon objections and exceptions of the prosecuting attorney herein, which relate to the trial of this particular case only, the decision of which would serve no purpose in determining the law to govern in a similar case.
 

 Exceptions overruled.
 

 Kinhade, Bobinson, Jones, Matthias and: Day, JJ., concur.