J. S. HARLAN, Appellee, v. J. B. ASH *et al.*, Appellants.

1. **Practice in Supreme Court:** NONREVERSIBLE ERROR. Where the evidence in a cause is conflicting, the judgment of the district court will not be reversed upon appeal, if there is evidence to support it.

2. **Chattel Mortgage:** SALE: MORTGAGEE'S INTEREST IN PROCEEDS. Where mortgaged chattels were sold by the mortgagor with the knowledge of the mortgagee, and the proceeds placed in the hands of a banking firm, of which the plaintiff was a member, by whom the same were, under the direction of the mortgagor, applied in part towards the satisfaction of a mortgage which was junior to that held by one of the defendants, *held*, in an action at law upon a promissory note given by the senior mortgagee to said bank, and afterwards assigned to the plaintiff upon the dissolution of said firm, that the plaintiff could not, as a member of said firm, be held to account for the proceeds of said mortgaged chattels which had been applied to the mortgage junior to that of the defendant, the latter having no lien thereon.

*Appeal from Cass District Court.*—HON. A. B. THORNELL, Judge.

TUESDAY, OCTOBER 27, 1891.

ACTION to recover an amount alleged to be due on a promissory note. There was a trial by the court without the aid of a jury, which resulted in a judgment in favor of the plaintiff. The defendants appeal. *Affirmed.*

*L. L. De Lano,* for appellants.

*R. G. Phelps* and *Rockafellow & Scott,* for appellee.

ROBINSON, J.—The note in suit was made on the seventeenth day of October, 1887, in favor of the Commercial Bank of Atlantic, for one hundred dollars, with interest thereon at ten per cent. per annum. It was signed by the defendants, J. B. Ash and C. Slater. The payee was a partnership, of which the plaintiff, E. J. Dickerson, and R. G. Phelps were the partners. The defendants allege that the plaintiff is not the owner of the note, but that it belongs to the partnership, and that he has in his possession the sum of one hundred and thirty-four dollars, which belongs to Slater on account of money received by him from the sale of cattle which belonged to Ash, and upon which Slater held a mortgage. Slater asks judgment for the remainder due him after the payment of the note, and Ash asks to be discharged, with his costs. In an amendment to the answer, Slater asks that the proceeds of the sale of the cattle alleged to be in the possession of the plaintiff be treated as a fund, to be applied in paying the note in suit, and for general equitable relief. The cause was not transferred to the equity docket, but was tried as an action at law. The court rendered judgment against the defendants for the amount of the note, with an attorney's fee and costs.

The material facts of the case appear to be substantially as follows: In May, 1887, Ash purchased of Clough & Coe thirty-five steers, and in payment gave his note for nine hundred and one dollars and twenty-

five cents, secured by a mortgage on the steers. A few days later Ash gave to one Baxter a mortgage on five other steers he then owned, and upon other property, to secure a note for eight hundred and twenty-eight dollars and sixty cents. In September of the same year Ash gave a mortgage to Slater on the thirty-five steers mortgaged to Clough & Coe, and on the five steers mortgaged to Baxter, and also on three steers, not included in either mortgage, to secure the payment of a note for five hundred dollars. That note was made for the accommodation of Ash, and was indorsed to William Christie, and the proceeds paid to Ash. In February, 1888, Ash gave to Dickerson a mortgage on the thirty-five steers which had been mortgaged to Clough & Coe and to Slater, and to secure a note for the sum of two hundred dollars, and made it, in terms, subject to the mortgages to those persons. Each mortgage was duly recorded on or about the day it was given. A short time after the last mortgage was executed, Ash shipped the forty-three steers to Chicago, and there sold them, and placed the proceeds, amounting to thirteen hundred and thirty-one dollars and seventeen cents, in a Chicago bank, to the credit of the Cass County Bank, for his own use. The bank last named was advised of the deposit to its account, and gave Ash credit for the amount. Within a day or two thereafter Ash gave the Commercial Bank a check on the Cass County Bank for the full amount of the credit, and it was immediately drawn out, and, by direction of Ash, nine hundred and seventy-five dollars and eighty-five cents were paid to discharge the Clough & Coe indebtedness, one hundred and sixty-six dollars were paid to Baxter, and the balance, one hundred and eighty-nine dollars and thirty-two cents, was applied on the two hundred dollar note given to Dickerson, but owned by the Commercial Bank. A few days later Ash paid the remainder due on that note, and it was surrendered to him. Immediately

.after the money was drawn from the Cass County Bank, and before it was applied as stated, both Slater .and Christie had some conversation with the members ·of the bank, and Christie claimed a part of· the money under the Slater mortgage.   Slater insists that he also claimed a part of the money under his mortgage, and, .although there is some controversy as to what was said, the evidence satisfies us that he did make the claim to Harlan as stated.   Slater knew before the cattle were :shipped that Ash intended to send them to Chicago for :sale, but made no objection to his doing so, and said nothing about the disposition to be made of the pro-·ceeds until after they had been paid to the Commercial Bank.   Slater asks that the balance of the money real-ized on the sale of the cattle, after deducting the amount paid on the claim of Clough & Coe and to Baxter, be held as a fund, to be applied in payment of the chattel ·mortgage which he held against Ash; that this mort-.gage be declared to be a valid lien thereon, and enforced .against said fund; that it be adjudged that a sufficient .amount thereof be applied by the plaintiff or the Com-·mercial Bank in paying the note in suit; and that he have judgment against the plaintiff for the remainder, ·with interest.

I. It is claimed that the note is not the prop-·erty of the plaintiff, but of the Commercial Bank.   It appears that before this action was com-menced the plaintiff took the note, and gave his check for the amount to the bank.   Since that time the note has been ·treated as belonging to him.   Dickerson has retired from the firm, and in settling with him the check was ·treated as firm assets.   The note has not been indorsed ·to the plaintiff, nor has the check been paid, it is true; but there was evidence to sustain the conclusion of the ·district court that he is the owner of the note, and we ·cannot overrule it.

1. PRACTICE in supreme court: non-reversible error.

II. The claim of the appellants is, in substance, that the sum of one hundred and eighty-nine dollars and thirty-two cents in question was a trust fund, to which Slater is entitled by reason of the facts we have stated. Whether the payment of the money to the Commercial Bank created a trust that a court of equity would have enforced we need not determine. This action was tried as at law in the district court, and must be so treated here. As we regard the case, as now presented, the only question to be determined is whether the payment of the money in question to the bank operated as the payment of the note in suit. We think there is no ground for holding that it did. As has been stated, the mortgaged property was sold with the knowledge of Slater, without objection on his part, and, as we think the district court may well have found, without any agreement or understanding in regard to the disposition to be made of the proceeds. It is the general rule that a sale of mortgaged personal property, made without the consent of the mortgagee, does not divest the mortgage lien, as against a purchaser with notice. It follows, and has been so held, that the mortgage lien does not at law attach to the proceeds of the sale. *Waters v. Cass Co. Bank*, 65 Iowa, 234; *Nordby v. Clough*, 79 Iowa, 430. Applying the rule of those cases to this, we must hold that Slater's mortgage lien did not attach to the money in question. That being true, Slater was not entitled to a credit for it, and it did not operate as a payment on the note which the mortgage was designed to secure. Much less could it have had that effect upon the note in suit, for that had no relation whatever to the mortgage. The plaintiff never had possession of the proceeds of the mortgaged property in his own right, but as a member of the partnership only. There is some claim that the Commercial Bank recognized the alleged right of Slater, but the weight of the evidence is against the claim.

*2. CHATTEL mortgage: sale: mortgagee's interest in proceeds.*

We conclude that there is no sufficient ground for disturbing the judgment of the district court, and that it must be AFFIRMED.