OF THE

## STATE OF IOWA

AT

## DES MOINES, MAY TERM A. D. 1906

AND IN THE SIXTIETH YEAR OF THE STATE.

---

FARMER, THOMPSON AND HELSELL, Appellees, v. THE BANK
OF GRAETTINGER, ET AL., Appellants.

Conversion of mortgaged property: UNRECORDED ASSIGNMENT:
1 RIGHTS OF ASSIGNEE: EVIDENCE. The assignee in an undisclosed
assignment of a chattel mortgage takes the risk of parties deal-
ing with the original mortgagee the same as in cases of real
estate, so that an action for conversion against the mortgagor,
or those claiming through him, cannot be predicated on a good
faith sale made with consent of the mortgagee and without
notice, either actual or constructive, of the assignment: and the
exclusion of evidence of the original mortgagee's consent to a
sale, under such circumstances is error.

Same: NOTICE OF SALE: CONSENT: EVIDENCE. One who participates
2 in a wrongful sale of mortgaged property, receiving the pro-
ceeds of a portion thereof, is guilty of conversion, and he is

469

not relieved by the good faith of his acts. Evidence reviewed and held insufficient to charge the assignee of a chattel mortgage with notice of an intended sale of the mortgaged property, or to show consent to the sale by such assignee, so as to relieve a third party, who received the proceeds, from liability in an action for conversion.

**Same:** ACCEPTANCE AND RETENTION OF PART OF PROCEEDS. The receipt by a mortgagee, or his assignee, of a portion of the proceeds arising from a wrongful sale of the mortgaged property, prior to a knowledge of the wrongful sale, and its retention thereafter, will not defeat an action in conversion for the balance due.

**Bills and Notes:** NEGOTIABILITY. The provision in a note that sureties consent to an extension of time of payment without notice does not effect its negotiability.

*Appeal from Palo Alto District Court.*— Hon. A. D. Bailie, Judge.

TUESDAY, MAY 8, 1906.

ACTION at law to recover damages for a conversion of personal property. At the close of all the evidence in the case, there was a directed verdict and judgment in favor of plaintiffs, and defendants appeal.— *Reversed.*

*E. A. Morling,* for appellants.

*Carr, Hewitt, Parker & Wright, F. H. Helsell,* and *Kelly & Kelly,* for appellees.

BISHOP, J.— Quite necessary to an understanding of the questions presented in argument are the facts in the case, and we shall set forth the substance thereof. October 10, 1898, Morris & Cuthbert sold and delivered to J. W. Smith, a farmer and cattle feeder living near Graettinger in Palo Alto county, sixty-five head of two year old steers. In payment, Smith gave his two notes, one for $1,650, due June 10, 1899, and the other for $750, due October 10, 1899. Said notes were in ordinary form, except that in the body of

each thereof was this provision: " Sureties hereby consent that time of payment may be extended from time to time without notice thereof." To secure said notes, Smith gave a chattel mortgage in ordinary form covering the steers purchased, and such mortgage was duly recorded October 26, 1898. In January, 1899, a payment of $816 was made to Morris & Cuthbert and indorsed on the $1,650 note. In April, 1899, Morris & Cuthbert sold and transferred said notes and mortgage for full value to plaintiffs, a banking firm doing business at Sioux Rapids in Buena Vista county. When transferred, the notes were indorsed in blank by Morris & Cuthbert. It does not appear that any formal assignment of the mortgage was executed, and certainly none was recorded. At the time of their purchase of· said notes, plaintiffs also held by purchase a further note for $295, due May 10, 1899, given by Smith to Morris & Cuthbert and indorsed by the latter. Such note was secured by chattel mortgage on cattle, other than those included in the mortgage of October 10, 1898. On May 29, 1899, Smith drove into Graettinger forty-one head of the steers included in the October, 1898, mortgage, and on that day or the next they were shipped, together with forty head of hogs, to Chicago, the shipment being made in the name of the defendant Bank of Graettinger. Sale was made in Chicago to various persons, butchers, and packers, and the proceeds returned to the defendant bank and credited to Smith.

Respecting the connection of the defendant bank with the transaction, it appears that some time early in the spring of 1899 Smith applied to Donlon, cashier in charge of the bank, for a loan of money to be used in buying feed for his stock. At the time thereof Smith advised Donlon of the existence and approaching maturity of the $295 and the $1,650 notes given to Morris & Cuthbert. It may be here remarked that Donlon, as a witness on the trial, testified that he was not advised of the $750 note, or the mortgage, and that, as matter of fact, he did not know of the same un-

til long after the cattle had been sold. Smith obtained the loan desired, and, later on, a further loan with which to buy a car load of hogs. Upon receiving notice from plaintiff's bank, of the maturity of the two notes, Smith went to the defendant bank and an arrangement was made with Donlon, one result of which was a letter addressed and mailed by Donlon to plaintiff's bank as follows: " Graettinger, Iowa, May 20, 1899. Bank of Sioux Rapids, Sioux Rapids — Gentlemen: J. W. Smith wishes us to write to you asking that you send his two notes to us for collection, the one of $295 past due since May 10, and the balance on large note, $917.85, due June 10. He will ship his cattle about June 1, and make sight draft through us on shipment, so that we can guarantee the payment of the notes as soon as he ships if you send them. [Signed] P. H. Donlon, Cashier." Plaintiffs at once sent by mail the two notes as requested, and on May 23d, Donlon, as cashier, acknowledged receipt thereof. Following this, the shipment was made as above stated. The amount realized from the steers was $2,-472.50, less a proportionate share of the total expense, which was $201. Upon check executed by Smith, the bank sent draft to plaintiffs for $1,233.90, being the amount due on the two notes; it took a check for the amount due itself from Smith, and the balance was paid out on checks drawn by Smith in favor of various other persons. Soon thereafter, Smith became insolvent, and failed to pay the $750 note. Plaintiffs having made discovery that the steers included in the June shipment were of those covered by the mortgage held by them, this action followed. The further material facts will be stated as we proceed, and in connection with the particular subject-matter to which they have relation.

I. There was evidence before the jury sufficient upon which to sustain a finding to the effect that, at the time he shipped the cattle, Smith did not know plaintiffs were the owners of the notes and mortgage. As a witness for defendant, Smith was interrogated in chief as to conversations

had by him with members of the firm of Morris & Cuthbert

**1. CONVERSION OF MORTGAGED PROPERTY:** un-recorded assignment: rights of assignee: evidence. having reference to the feeding, marketing, and selling the mortgaged steers, and the disposition of the proceeds upon sale being made. These interrogatories were directed in part to the time before plaintiff acquired ownership of the notes and mortgage, and in part to a time subsequent and just before the shipment. All such interrogatories were objected to by plaintiffs, and the objections sustained. Therein, we think, was error. It will be remembered that the assignment of the mortgage to plaintiffs was not made a matter of record, and it is to be said that no evidence was brought forward by them in proof of actual notice given to Smith, or to the defendant bank, of their ownership. As the record stands, the jury would have been warranted in finding, as matter of fact, that neither Smith nor the bank knew of such ownership. Now, in such situation, if Smith was not chargeable with a conversion, the bank could not be, and this seems too plain for argument. In favor of defendant, we must assume that Smith would have testified, if allowed to answer, that subsequent to the execution of the mortgage, and, conforming to the questions asked, in January, 1899, and again just before the shipment in May, Morris & Cuthbert consented to and directed a sale of the cattle by him on the market, to be made at such time as in his judgment would be expedient and proper; further, that the sale as made was pursuant to such consent and direction.

With such facts established it would go without saying that Morris & Cuthbert could not be heard to charge a conversion. In case of a sale thus made, the purchaser takes the property divested of the lien of the mortgage. *Smith v. Bank,* 99 Iowa, 282; *Harlan v. Ash,* 84 Iowa, 38; *Livingston v. Stevens,* 122 Iowa, 62. And the mortgagee may not be heard to claim a lien on the proceeds. *Harlan v. Ash, supra; Nordby v. Clough,* 79 Iowa, 428; *Waters v. Bank,* 65 Iowa, 234. 7 Cyc. page 46 and cases cited in note.

There being no lien, a third party who has received and applied the proceeds of such a sale, acting in good faith, and in the ordinary course of business, will be protected. Smith v. Bank, *supra; Smith v. Clark,* 100 Iowa, 605.

In Smith v. Bank, the facts appearing were that each of the parties held mortgages executed by one Carvell upon a certain herd of cattle — that of plaintiff being the prior lien. The bank had actual knowledge of the existence of plaintiff's mortgage. Plaintiff consented that Carvell might ship and sell the cattle, and this was done. By direction of Carvell the proceeds were remitted to and deposited in his name in the defendant bank, and, upon this being done, Carvell gave the bank a check for the amount due upon its mortgage indebtedness, and directed that payment of the balance be made to plaintiff. It was held that as the proceeds of the sale were not impressed with any lien, and as upon the facts no relation of trust was established, plaintiff had no right as against the bank to question the payment made by Carvell to it in satisfaction of its debt. See, also, *Maier v. Freeman,* 112 Cal. 8 (44 Pac. 357, 52 Am. St. Rep. 155); *Estes v. McKinney* (Tex. Civ. App), 43 S. W. 556; *Fairweather v. Nelson,* 76 Minn. 510 (79 N. W. 506); *Bank v. Bernard* (Tex. Civ. App.), 30 S. W. 580; *Evans v. Bank,* 76 Mo. App. 449; 7 Cyc. 52.

What, then, is to be said as to the rights of plaintiffs in the premises? As we understand, the question is not whether plaintiffs took the mortgage free from latent equities inhering therein as between the mortgagor and the original mortgagees. It is whether a complete defense may be made out as against a charge of conversion preferred by an assignee of a mortgage, by showing that disposition of the property was made without notice, actual or constructive, of the rights or interests of such assignee, and pursuant to an agreement with, and under the direction of, the original mortgagee. And this question we think must be answered in the affirmative. As related to a mortgage upon chattel

property, the question does not seem to have arisen before in this state. But we have repeatedly held that in the case of an undisclosed assignment of a real estate mortgage, the assignee assumes the peril of parties dealing with the original mortgagee. In *Parmenter v. Oakley*, 69 Iowa, 388, it was said: " The mortgage in the absence of any transfer shown by the record, is presumed to be owned and controlled by the mortgagee and all men may deal with the mortgage on -the land, resting upon this presumption, in the absence of actual knowledge of the assignment of the mortgage." See also, *Quincy v. Ginsbach,*·92 Iowa, 144; *Jenks v. Shaw,* 99 Iowa, 604; *Olson v. Loan Co.,* 65 Minn. 475 (68 N. W. 100). The intent of the rule thus announced is not only to secure the recordation of instruments affecting the title to real estate, but to prevent fraud and wrongdoing. And, by analogy, much of the reasoning upon which the rule is made to rest is applicable to the case of an assignment of a chattel mortgage. It can work no hardship to an assignee by requiring of him that he give notice of his rights and interest, while, on the other hand, it would be against good conscience to say that an action as for conversion against the mortgagor and those claiming through, or under him, can be predicated on a good faith disposition of the mortgaged property, made with the consent and under the direction of the mortgagee, and he being the only person known to have an interest therein. Nothing that is said in *Gibson v. Mc-Intire,* 110 Iowa, 417, cited and relied on by counsel for appellee is in conflict with the conclusion as above expressed.

II. In view of a possible retrial of the case, we think it proper to express opinion respecting such of the other questions presented by counsel for appellant in argument, as will presumably again confront the trial court. To begin with, it is said by counsel for appellant that in any event the facts do not disclose any such hostile interference with the plaintiff's right of property as to amount to a conversion; that, in truth, de-

2. SAME: notice of sale: consent: evidence.

fendant acted in the transaction only as a collecting agent for plaintiffs, and, as the latter knew that the cattle were to be sold by Smith, and as they received from defendant out of the proceeds the full amount of the notes sent for collection, and retain the same, they can have no standing to complain as of a conversion. This contention is without force. Smith lived some distance from Sioux Rapids, and was not known to the members of the plaintiff firm except by reputation as a cattle feeder and dealer. He gave to plaintiffs no intimation of his intention to make sale of the mortgaged property. To sustain its contention, defendant is compelled to rely wholly upon the expression in the letter written to plaintiffs by Donlon on May 20th, and the reply thereto by plaintiffs. In our view, the letter of Donlon cannot in any fair sense be distorted into notice that Smith contemplated making unlawful disposition of the mortgaged property. It was no more than a statement to the effect that out of the proceeds of a cattle shipment he designed to make payment of the two notes in the hands of plaintiff, which notes, as we have seen, were wholly unrelated to each other as far as security was concerned. Donlon could not have intended anything more for he testified that he acted in ignorance of the existence of the mortgages. Plaintiffs, in reply to the letter, did nothing more than to forward the notes as requested. Conceding that by the transaction defendant was constituted an agent of plaintiffs in the limited sense that it was authorized to receive from Smith and transmit the amount due on the notes, still it would be absurd to go farther and construe the correspondence into a notice of intent to dispose of mortgaged chattels on the one part, and a consent thereto on the other part. That what was done by defendant in making disposition of the cattle — if without authority — amounted to a conversion there can be no doubt. One who participates in a wrongful sale, and more particularly if he receive the proceeds thereof, is guilty of a conversion. And that his acts were dominated

by good faith will not relieve him from the consequences. 28 Am. & Eng. Ency. 700.

It is a further contention that as plaintiffs received a portion of the proceeds arising from the sale of the mortgaged property, and, as they retain the same since acquiring knowledge of the conversion, they have made their election to ratify and confirm the sale, and should not be allowed to recover in this action. There is no force in this contention. It is not a case where the mortgagee is seeking to avoid a sale and recover back the specific property, as were most of the cases to which we are cited in the brief. It is an action for conversion, and a recovery cannot be defeated simply on proof of a retention of that portion of the proceeds paid to plaintiffs before knowledge of the conversion. To say otherwise would be to require plaintiffs to pay back the amount received in order to entitle them to sue and recover from the same party a like sum, and such additional sum as would amount to the value of their interest in the property converted. Our conclusion finds support in the following authorities: *Bank v. Oberne,* 121 Ill. 25 (7 N. E. 85); *Reese v. Medlock,* 27 Texas, 126 (84 Am. Dec. 611); *Spooner v. Thompson,* 48 Vt. 256; *Thatcher v. Pray,* 113 Mass. 291; 1 Am. & Eng. Ency. 1199.

3. SAME: acceptance and retention of part of proceeds.

In one branch of his argument, counsel bases a contention upon the assumption that the notes held by plaintiffs were nonnegotiable, and this, because of the provision therein respecting sureties. The assumption is not warranted. As we think, the notes met all the requirements for negotiable instruments. There was no uncertainty as to the payee, the amount, or the time of payment. We may concede that in the case of an instrument providing in terms for extension of time of payment indefinitely, there is such uncertainty as to make the same nonnegotiable. And such are the cases of *Miller v. Poage,* 56 Iowa, 96, and *Woodbury v. Roberts,* 59 Iowa, 348, cited

4. BILLS AND NOTES: negotiability.

and relied upon by counsel. But in the notes before us, we have a distinct and unqualified agreement on the part of the makers to pay on a certain date. And we perceive no good reason for holding that the negotiable character thereof is destroyed because of a clause embodied therein providing that a surety, if such there shall be, will not claim a release from his collateral liability on the instrument, if, forsooth, an extension of time shall be granted the makers without notice to him. Our attention has been called to no case so holding. As well say that where sureties, guarantors, and indorsers entitled to notice of nonpayment, waive the requirement for such notice, the waiver must be given operation to destroy the negotiable character of the instrument. In the brief of points, counsel assert that plaintiffs are not entitled in any event to hold defendant to a liability beyond the amount of the debt secured by the mortgage upon the cattle alleged to have been converted. On this point we shall make no pronouncement at this time as it has not been argued on either side. Other questions argued are either without merit, or are not likely to again arise.

For the error pointed out in the first division of this opinion, the judgment must be, and it is, *reversed.*