**UNITED STATES v. FLEMING et al.**

Civ. No. 307.

District Court, N. D. Iowa, C. D.

Dec. 31, 1946.

Franklin E. Gill, of Sioux City, Iowa, Asst. U. S. Dist. Atty., for plaintiff.

Lloyd Karr of Webster City, Iowa, for defendant C. E. Beall.

Burnstedt, Hemingway & Hemingway, of Webster City, Iowa, for defendant Williams Savings Bank.

GRAVEN, District Judge.

Case involving liability of defendants in connection with property subject to chattel

mortgage. The defendant Charles F. Fleming was a farmer engaged in farming in Franklin County, Iowa. He had some corn stored on his father's premises in Hardin County, Iowa. Under the farm program adopted under the provisions of the Agricultural Adjustment Act of 1938, § 302, 7 U.S.C.A. § 1302, those farmers who participated in this program were eligible to secure corn loans from the Commodity Credit Corporation. The Commodity Credit Corporation was and is a corporate agency of the plaintiff and so far as this case is concerned they are one and the same and are referred to interchangeably. The note and mortgage forms for such loans were those specified and furnished by the Commodity Credit Corporation. The Commodity Credit Corporation entered into contracts with the different local banks under which it was provided that the Commodity Credit Corporation would repurchase any of such corn loans made by them. The defendant Williams Savings Bank was and is a bank engaged in the general banking business in the Town of Williams, Hamilton County, Iowa.

On December 16, 1940, the Commodity Credit Corporation entered into a contract with the defendant Williams Savings Bank under which the Commodity Credit Corporation agreed to re-purchase the corn loans made by that bank. That contract was a standard form of contract and provided in part that the Williams Savings Bank "will accept repayments of notes" which "were held by it" and make weekly reports as to such payments. The contract further provided that the Williams Savings Bank where it had assigned the mortgages of which it was the original payee, and the assignment was not of record, "that it will hold the legal title to such mortgages", for the account of all successive transferees including Commodity Credit Corporation.

On April 2, 1941, the defendant Charles F. Fleming secured a corn loan from the defendant Williams Savings Bank. The note and mortgage securing the same were executed to and payable to the defendant Williams Savings Bank. The chattel mortgage was on the corn stored by the defendant Charles F. Fleming in Hardin County Iowa. The original chattel mortgage was filed in the office of the County Recorder in Hardin County Iowa as provided by Secs. 556.3 to 556.10, Code of Iowa 1946. The original mortgage was with the County Recorder of Hardin County Iowa at all times and the defendant Williams Savings Bank did not at any time have actual possession of it. The corn loan note secured by the mortgage was due on or before August 1, 1943 or was payable upon demand of the Commodity Credit Corporation.

The defendant Williams Savings Bank at all times from December 19, 1940 up to January 18, 1943, was the holder of a chattel mortgage on the livestock, tools, machinery, crops and grain including corn, owned by the defendant Charles F. Fleming. On or about October 30, 1941, the defendant Williams Savings Bank sold, transferred and delivered the note secured by the corn loan chattel mortgage to the Farmers National Bank of Webster City, Iowa. The defendant Williams Savings Bank did not make a formal assignment of the chattel mortgage securing the corn loan note and that mortgage continued to stand of record in the name of the Williams Savings Bank.

On January 9, 1943, the defendant Charles F. Fleming sold all of the corn which was subject to the corn loan chattel mortgage to the defendant C. E. Beall who operated a grain elevator at Williams, Iowa. The defendant C. E. Beall made out the check for the purchase price of the corn jointly to the order of the defendant Charles F. Fleming and the defendant Williams Savings Bank. The evidence is not clear as to whether the defendant C. E. Beall called up the Williams Savings Bank at the time of the purchase and inquired as to whether it had a chattel mortgage on the corn or whether the defendant C. E. Beall from previous information and knowledge presumed that the Williams Savings Bank had a chattel mortgage on the corn. The mortgaged corn was disposed of by the defendant C. E. Beall and ceased to exist. On January 9, 1943, the defendant Charles F. Fleming took the joint check representing the proceeds of the sale of the corn to the defendant Williams Savings Bank and it and the defendant Charles F. Fleming both

endorsed the check and the check was turned over to the defendant Charles F. Fleming. The defendant Charles F. Fleming deposited the check in his checking account with the defendant Williams Savings Bank and subsequently checked it out for his own use. The defendant Williams Savings Bank did not apply any of the proceeds of the check on the indebtedness owing to it by the defendant Charles F. Fleming and received no benefit from the proceeds of the sale of the corn. The apparent reason for the defendant Williams Savings Bank not making any application of the proceeds on the indebtedness owing to it by Charles F. Fleming was that it deemed such indebtedness amply secured by the other property included in its mortgage. Shortly thereafter the defendant Charles F. Fleming paid to the Williams Savings Bank in full his indebtedness to it out of the proceeds of a public sale held by him. The amount of the check was in excess of the amount of the corn loan note in question. The defendant Williams Savings Bank had, previous to this transaction transferred the corn loan note to the Farmers National Bank of Webster City, Iowa without a formal assignment of the mortgage securing it. The corn loan chattel mortgage at the time of this transaction still stood in the name of the Williams Savings Bank. The Commodity Credit Corporation presumably pursuant to agreement with the Farmers National Bank of Webster City, Iowa, re-purchased the corn loan note from that bank on about August 11, 1943.

The officers of the defendant Williams Savings Bank at the time of the joint check for the proceeds of the mortgaged corn was presented to them, did not have in mind the existence of the corn chattel mortgage or the situation in regard to the same and no investigation was made by them as to those matters. The defendant Charles F. Fleming testified that he did not recall any particular conversation he had with the officers of the Williams Savings Bank at the time he presented the joint check to them. It appears that the Williams Savings Bank at the time of the check transaction knew that the check represented the proceeds of the sale of corn, and assumed that it was the proceeds of the corn

covered by its own mortgage. The defendant Charles F. Fleming did not have or secure the consent of either the Williams Savings Bank or the Farmers National Bank of Webster City, Iowa or the Commodity Credit Corporation to sell the mortgaged corn. The corn loan note now held by the plaintiff is still due and unpaid. The plaintiff seeks judgment against the defendants Charles F. Fleming, Williams Savings Bank and C. E. Beall, to the extent and amount of the unpaid note. The defendant Charles F. Fleming had defaulted and it seems apparent that he is regarded by the parties as being financially irresponsible. The defendant Williams Savings Bank and the defendant C. E. Beall both deny liability to the plaintiff. Each of those defendants claims that if there is any liability to the plaintiff it is the liability of the other defendant. The defendant C. E. Beall claims that when he made out the check for the mortgaged corn jointly to the Williams Savings Bank and Charles F. Fleming that he was under no further liability in connection with the matter. The same defendant raises other defenses which will be hereafter referred to. The defendant Williams Savings Bank claims that there was nothing in connection with their relations with the Commodity Credit Corporation, or in handling of the proceeds of the sale of the mortgaged corn that made it liable to the plaintiff.

■ In this case there was a valid note secured by a valid chattel mortgage. The property covered by the chattel mortgage has been sold without the knowledge and consent of the holder of the note and the note still is wholly unpaid. Ordinarily, a creditor cannot be thus deprived of the benefit of his security without having a claim against one or more of those intermeddling with the security unless the creditor has waived or lost his right to assert such claim.

■■ In this case jurisdiction is based upon 28 U.S.C.A. § 41(1). The pertinent portion of that statute provides that the district courts of the United States shall have jurisdiction "Of all suits of a civil nature, at common law or in equity, brought by the United States." Jurisdiction in this

case not being based upon diversity of citizenship the case is not within the scope of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487. Prior to that decision the federal courts had adopted the principle of applying local law in cases having to do with chattel mortgages. Jones v. Third National Bank, 8 Cir., 1926, 13 F.2d 86; Garrison v. Kurt, 8 Cir., 1918, 249 F. 672; Murphy Hotels Corp. v. Central Nat. Bank Savings and Trust Co., 6 Cir., 1927, 18 F.2d 719; In re Antigo Screen Door Co., 7 Cir., 1903, 123 F. 249. The same principle was applied in cases involving chattel mortgages after the decision in the case of Erie R. Co. v. Tompkins, supra. In re Parkway Knitting Mills Inc., 2 Cir., 1941, 119 F.2d 605, certiorari denied, 1941, 314 U.S. 646, 62 S.Ct. 89, 86 L.Ed. 519. The foregoing cases were all cases in which the suitors were private parties. In the present case the note and chattel mortgage securing it were made under and as a part of a federal farm program and it is the federal government which is asserting its rights in connection with such loan. It would seem that questions as to the provisions of notes and mortgages used by the federal government in carrying out its farm programs and contracts made by it with local banks as to the handling of corn loans under such programs would be governed by federal and not local law. In the present case the federal government made use of local state recording statutes to give notice of rights under corn loan chattel mortgages and therefore it would seem that the question of record notice and questions related thereto would be governed by local law.

 In the present case the chattel mortgage described the mortgaged corn and gave its location with such definiteness that third parties aided by inquiries which the instrument suggested would be able to identify the property. Such a description is sufficient. Iowa Savings Bank v. Graham, 1931, 192 Iowa 96, 181 N.W. 771. The chattel mortgage in this case being properly filed of record was notice to all the world. Root v. Schaffner, 1874, 39 Iowa 375. Such filing of record gave constructive notice to all that the corn in question was subject to a chattel mortgage. Liscomb State Savings Bank v. Aker, 1924, 197 Iowa 706, 197 N.W. 890.

 A mortgagor who makes an absolute sale of mortgaged personal property without the consent of the mortgagee is guilty of conversion. 14 C.J.S., Chattel Mortgages § 261, p. 874. In a number of states including Iowa there are criminal penalties provided where a mortgagor sells property subject to chattel mortgage without the consent of the mortgagee. See 14 C.J.S., Chattel Mortgages, § 279, pp. 907 and Sec. 710.12, Code of Iowa 1946. A person charged with notice of a chattel mortgage who purchases the property covered thereby without the consent of the mortgagee is guilty of conversion, 14 C.J.S., Chattel Mortgages, § 264, p. 886. In the virtue of the filing for record of the corn present case the defendant C. E. Beall by virtue of the filing for record of the corn chattel mortgage was constructively charged with notice that he was purchasing corn which was subject to chattel mortgage. In the frequent type of case in Iowa where the mortgagor sells mortgaged property without the consent of the mortgagee the proceeds of the sale are paid to the mortgagee to apply on the mortgaged debt. It is well settled that the accepting of the mortgagee of the proceeds of the sale of mortgaged personal property with knowledge of their source operates as a ratification of the unauthorized sale. 14 C.J.S., Chattel Mortgages, § 262, p. 881. However, a mortgagee is generally interested in having the chattel mortgage property sold at a proper time and for a proper price. To allow a mortgagor without the consent of the mortgagee to sell at will where and when he wishes would in many cases seriously impair the security for the loan. Where a mortgagee has not given his consent to the sale of mortgaged personal property before the sale it is optional with the mortgagee when he learns of the sale whether he wishes to accept the proceeds of it and thereby ratify the sale or whether he wishes not to ratify the sale and proceed against the purchaser as a converter. It is well settled that the transfer of a note secured by a chattel mortgage carries with it the

security for the debt without formal assignment. Jones, Chattel Mortgages, 4th Ed., Sec. 503. See Also State v. Gibson, 1925, 199 Iowa 377, 202 N.W. 108. It is also well settled that an assignment of a debt carries with it the remedies or security available to assignor as an incident thereto even though not specially mentioned and regardless of the assignor's knowledge or lack of knowledge as to their existence. Edwards v. Bay State Gas Co., C.C.Del., 1911, 184 F. 979. In the present case at the time of the unauthorized sale of the mortgaged property to the defendant C. E. Beall, the note secured by the chattel mortgage was held by the Farmers National Bank of Webster City, Iowa. Any claim against the defendant C. E. Beall at that time for the unauthorized purchase of the mortgaged property would have been a claim in favor of the Farmers National Bank of Webster City, Iowa. The defendant C. E. Beall claims that at the time of his unauthorized purchase of the mortgaged corn that the Farmers National Bank of Webster City, Iowa could not have maintained an action against him for conversion. In support of that contention that defendant cites 65 Corpus Juris p. 80, Sec. 131 in which it is stated: "In actions for conversion it is necessary to allege ownership, possession or right of possession of the property converted in the plaintiff at the time it was alleged to have been converted." The action of trover and conversion was originally one of the technical common law forms of action. Under the technical common law forms of action, an action had to be such as to fit into a certain rigid mold or it could not be maintained at all. However, under the modern rules of civil procedure, forms of action have lost much of their importance. In the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it is provided in Rule 1, that the rules "Shall be construed to secure the just, speedy, and inexpensive determination of every action". In Rule 2 of those Rules, it is provided: "There shall be one form of action to be known as a 'civil action'". Under the new Iowa Rules of Civil Procedure, Code of Iowa 1946, pp. 2137 to 2194, it is provided in Rule 67 as follows: "All common counts, general issues, demurrers, fictions and technical forms of action or pleading, are abolished. The form and sufficiency of all motions and pleadings shall be determined by these rules, construed and enforced to secure a just, speedy and inexpensive determination of all controversies on their merits". Thus, all technicalities and fictions in connection with the actions for misappropriation of mortgaged personal property are no longer applicable. In Iowa the holder of a chattel mortgage has only a lien against the mortgaged property. However, it is well settled that a chattel mortgage lienholder has such ownership that he may maintain an action for conversion against those who attempt to deprive him of his security rights. Capital Loan Co. v. Keeling, 1935, 219 Iowa 969, 972, 259 N.W. 194. In Sec. 556.2, Code of Iowa 1946 it is provided: "In the absence of stipulations in the mortgage, the mortgagee of personal property is entitled to the possession thereof, * * *." In the mortgage in the present case while there is provision in the mortgage for the mortgagor providing storage arrangements for the corn there is no express stipulation negativing the right of the chattel mortgagee to possession. There are some authorities that hold that a mortgagee cannot maintain an action for conversion of the mortgaged property where the mortgage debt is not due or where the mortgagee is not entitled to immediate possession. However, even if the situation were such that a chattel mortgagee could not fulfill the technicalities of the common law action of trover and conversion, it does not mean that he has to sit helplessly by while the mortgage security is being dissipated. His remedy in such a case would be by injunction and by a suit for damages for impairment of his security. Thus, whether a lienholder calls his action one for conversion or for damages to the impairment of his lien, the result would seem to be the same. In Iowa it is settled that one who impairs the security of a lienholder by disposition of the property subject to lien is liable in conversion to the lienholder. Rew v. Maynes, 1910, 147 Iowa 15, 125 N.W. 804. It would appear that under the Iowa law that the Farmers National Bank of Webster City, Iowa at the

time the defendant C. E. Beall purchased the corn had such ownership and status that it could have maintained an action for conversion against him. However, the Farmers National Bank of Webster City, Iowa is not the party now asserting the claim. The claim is being asserted by the plaintiff as an assignee of the Farmers National Bank of Webster City, Iowa. The defendant C. E. Beall claims that the cause of action of conversion of the Farmers National Bank of Webster City, Iowa did not pass to the plaintiff by the assignment of the mortgage note. The assignment of the mortgage note by the Farmers National Bank of Webster City, Iowa to the plaintiff carried with it the chattel mortgage. At the time of the assignment all of the mortgaged property had already been converted. There are a number of older cases which hold that the assignment of a chattel mortgage does not operate as an assignment of a cause of action for antecedent conversion of the mortgaged property. Bowers v. Bodley, 1879, 4 Ill.App. 279; Gobbert v. Wallace, 1889, 66 Miss. 618, 5 So. 394; Gaskill v. Barbour, 1898, 62 N.J.L. 530, 41 A. 700. The rule had its inception in the case of Bowers v. Bodley, supra, and was followed by later cases. The reason given for the decision in Bowers v. Bodley, supra, for holding that the cause of action did not pass was that a cause of action for conversion was not assignable. The common law rule was that a cause of action for tort to property was not assignable and such was the rule in Illinois at that time. Chicago & Alton R. Co. v. Maher, 1878, 91 Ill. 312. It is now well settled however, that a cause of action for conversion is assignable. 6 C.J.S., Assignments, § 34, p. 1083. Under the Iowa law a cause of action for a tort may be assigned. Vimont v. Chicago & N. W. Ry. Co., 1884, 64 Iowa 513, 21 N.W. 9; Everett v. Central R. Co., 1887, 73 Iowa 442, 35 N.W. 609. It is held in some of the more recent cases that an assignment of a chattel mortgage operates as an assignment of a cause of action for the antecedent conversion of the mortgage property. Zinn v. Denver Livestock Commission Co., 1920, 68 Colo. 274, 187 P. 1033. It seems clear that under the Iowa

Law and under the more recent decisions elsewhere that the cause of action for the conversion of the corn question passed to the plaintiff by the assignment of the mortgage note in question.

It is the claim of the defendant C. E. Beall and the plaintiff that under the contract between the defendant Williams Savings Bank and the Commodity Credit Corporation that the Williams Savings Bank was the agent of the Commodity Credit Corporation to receive payments on the corn loan note in question. The contract between the Williams Savings Bank and the Commodity Credit Corporation was that the Williams Savings Bank would "accept repayments of notes" which are "held by it". The note in question was not held by the Williams Savings Bank at the time of the check transaction.

It is the claim of the plaintiff that the defendant Williams Savings Bank is liable to it because of the provision in the contract between the Williams Savings Bank and the Commodity Credit Corporation under which the Williams Savings Bank agreed that where a corn loan note had been assigned but the mortgage securing it had not been assigned of the record that the Williams Savings Bank would "hold legal title" for the account of the assignees of the note. It is the claim of the Williams Savings Bank that its only obligation under that provision of the contract was not to assign or release the chattel mortgage in such cases. Where a mortgage stands of record of the name of a party after the note secured by it has been assigned there is always danger that those not knowing of the assignment of the note will deal with the record holder of the mortgage as the actual owner. It is possible for such an apparent holder to do acts not authorized by the actual owner which are binding on the actual owner. Thus, where a chattel mortgage stands of record in the name of the original mortgagee, after the assignment of the note securing it, and the original mortgagor not knowing of the assignment secures the consent of the original mortgagee for the sale of the mortgaged property, neither the mortgagor nor the purchaser from him are guilty of conver-

sion even though the actual owner of the mortgage does not receive the proceeds of the sale. Farmer, Thompson & Helsell v. Bank of Graettinger, 1906, 130 Iowa 469, 107 N.W. 170. In the absence of any transfer of record a mortgage is presumed to be owned and controlled by the mortgagee named therein. Parmenter v. Oakley, 1886, 69 Iowa 388, 28 N.W. 653; Quincy v. Ginsbach, 1894, 92 Iowa 144, 60 N.W. 511. It is believed that the provision in the contract between the Commodity Credit Corporation and the Williams Savings Bank in regard to the bank holding "legal title" to corn loan mortgages standing of record in the name of the bank after the assignment of the note secured by such mortgages imposed the obligation on the Williams Savings Bank not to cause any detriment to the holders of such notes in connection with the chattel mortgage security based upon its apparent ownership of the chattel mortgage.

It is the claim of the defendant C. E. Beall that because the chattel mortgage stood of record in the name of the Williams Savings Bank that payment to it would be binding on the assignee of the note. It is not necessary to ascertain as to under what conditions payment made to a mortgagee of record without notice of the assignment of the note secured thereby is binding upon the assignee. In the present case the defendant Charles F. Fleming did not purport to offer the check in payment of the corn loan note. The defendant C. E. Beall had converted property subject to chattel mortgage which was a wrongful act itself. That defendant could only absolve himself from liability for such conversion if he were successful in having the injured party ratify the unauthorized sale by accepting the proceeds. That defendant attempted to absolve himself from liability for conversion by tendering the proceeds to the Williams Savings Bank. The Williams Savings Bank was not the party injured by the conversion. The defendant C. E. Beall was not misled into buying the corn by the fact that the mortgage still stood in the name of the Williams Savings Bank. He was merely misled as to who was the injured party who might ratify his wrongful act. It does not appear that the Williams Savings Bank had any authority to ratify the unauthorized sale of the mortgaged property. It seems clear that the defendant C. E. Beall was liable to the plaintiff for the conversion of the corn in question. The question of whether the plaintiff has lost or waived his claim against the defendant C. E. Beall will be referred to later.

The next question is as to the liability of the Williams Savings Bank in connection with the proceeds of the sale. In Hall v. Merchants' State Bank, 1925, 199 Iowa 483, 485, 202 N.W. 256, 257, 38 A.L.R. 1093 it is stated: "In Brown v. [Dubuque] Altar Mfg. Co., 163 Iowa 343, 144 N.W. 613, we quoted from 2 Cooley on Torts (3d Ed.) p. 859, as follows: 'Any distinct act of dominion, wrongfully exerted over one's property, in denial of his right or inconsistent with it, is a conversion. The action of trover, being founded on a conjoint right of property and possession, any act of the defendant which negatives or is inconsistent with such right amounts in law to a conversion. It is not necessary to a conversion that there should be a manual taking of the thing in action by the defendant; it is not necessary that it should be shown that he has applied it to his own use. Does he exercise a dominion over it in exclusion or defiance of the plaintiff's right? If he does, that in law is a conversion, be it for his own or for another person's use.'" In the case of Flannery v. Harley, 117 Ga. 483, 43 S.E. 765, 766, it is stated "Whoever meddles with another's property, * * * does so at his peril * * *." In the case of Employer's Fire Insurance Co. v. Cotten 1927, 245 N.Y. 102, 156 N.E. 629, 630, 51 A.L.R. 1462, it is stated: "A very slight interference with the ownership is sufficient to constitute conversion". In the case of Farmer, Thompson & Helsell v. Bank of Graettinger, 1906, 130 Iowa 469, 476, 107 N.W. 170, 172, the court states in regard to a converter as follows: "And that his acts were dominated by good faith will not relieve him from the consequences." In Bowers, The Law of Conversion (1917) p. 2, it is stated: "Nor is it necessary that the property be applied to the use of the defendant, nor even of a third person. The element of controlling influence is the owner's loss, not the wrongdoer's benefit."

There could be successive converters of the same property or joint converters of the same property. A party wronged by the successive conversions or by a joint conversion has a cause of action against all the participants. Where mortgaged property is converted by successive converters the chattel mortgage holder can maintain an action against all who deal with the mortgaged property until the property loses its identity. In general, when converted property is turned into money it loses its identity. In case of Walker v. First Nat. Bank, 43 Or. 102, 105, 72 P. 635, it is stated: "When personal property has been converted by a wrongdoer, it may be followed by the owner into the hands of anyone receiving it, whether taken with knowledge of his right, or not, so long as the identity of the property can be shown, whatever form it may take. * .* * But when the property has been converted into money, and the money has lost its specific identity by becoming a part of a large mass, the original owner of the property cannot assert his right against the one receiving the money in good faith."

As a general rule the lien of a mortgage does not attach to the proceeds of an unauthorized sale of mortgaged property. Waters v. Cass County Bank, 1884, 65 Iowa 234, 21 N.W. 582; Simon Casady & Co. v. German Savings Bank, 1913, 159 Iowa 149, 140 N.W. 401; First Nat. Bank v. Security Trust & Savings Bank, 1923, 191 Iowa 842, 181 N.W. 402. The mere receipt of the proceeds of the sale mortgaged property is not a conversion, Iowa Farm Credits Co. v. People's Sav. Bank, 1923, 196 Iowa 967, 192 N.W. 139. Where the proceeds of the sale of converted property are received with knowledge of their source a court of equity will impose a constructive trust upon the traceable proceeds. Jones v. Home Savings Bank, 1925, 200 Iowa 1186, 206 N.W. 107; Detroit Trust Co. v. Struggles, 1938, 283 Mich. 471, 278 N.W. 385, 386. See also Schwanz v. Farmers' Co-Op. Co., 1927, 204 Iowa 1273, 214 N.W. 491, 494, 55 A.L.R. 644.

In the present case the defendant Williams Savings Bank was the assignor of the corn loan note. The duty of an assignor owing to an assignee is stated as follows in 6 C.J.S., Assignments, § 101, p. 1158: "As the assignment passes all the assignor's title or interest to the assignee * * *, and divests the assignor of all right of control over the subject matter of the assignment * * * it is usually held that by the mere fact of the assignment the assignor impliedly guarantees or agrees that he will not thereafter interfere with the thing assigned, and, if he does interfere to the damage of the assignee, he renders himself liable to the assignee for any damage resulting from such interference. Any act of dominion by the assignor over the thing assigned, depriving the assignee of title or right to possession, is a conversion for which the assignor may be held liable in tort; and, if the assignor proceeds to collect the sum due on an assigned chose, the moneys so coming into his hands are regarded as trust funds belonging to the assignee, who may recover the same either in an action for money had and received or in tort for conversion."

It would seem that the obligations assumed by the Williams Savings Bank in the contract with the Commodity Credit Corporation in regard to unassigned mortgages were not much different than it assumed as assignor of the corn note under general rules of law.

A party who has personally participated in a transaction is charged with actual knowledge of it. A party to whom a chattel mortgage has been executed as a part of a transaction with it must be charged with knowledge of whether that mortgage has been assigned or not. In the present case the Williams Savings Bank was chargeable with knowledge that a chattel mortgage had been executed to it on the corn in question and that it had assigned the note without a formal assignment of the mortgage. In addition the Williams Savings Bank was charged with constructive notice that the corn chattel mortgage stood in its name. When the check in question was presented to the bank made out to it and the defendant Charles F. Fleming jointly, it was notice to it that the check was so made out to it as the apparent holder of a chattel mortgage on the corn which was sold. Under both its contractual obligation and under its common law obligation as

assignor, it was its duty not to deal with the proceeds as its own. By endorsing the check as a purported mortgagee of the corn and turning the proceeds over to the defendant Charles F. Fleming, the bank wrongfully exercised rights of dominion over the proceeds to the detriment of the actual owner of the chattel mortgage. It seems clear that the defendant Williams Savings Bank is liable to the plaintiff for the amount of such proceeds up to the amount of the unpaid note, either on the theory of money had and received or upon the theory that it converted the proceeds.

 It has been heretofore noted that at the time of the sale of the mortgaged corn the defendant C. E. Beall became liable for the conversion of it, and that the only question left so far as that defendant was concerned was whether the plaintiff had lost or waived its claim against him. In Lindburg v. Engster, 1935, 220 Iowa 1073, 264 N.W. 31, 37, 116 A.L.R. 591, it is stated: "The rule adopted in this state, as stated in Kearney Milling & Elevator Co. v. Union Pac. R. Co., 97 Iowa 719, 66 N.W. 1059, 1061, 59 Am.St.Rep. 434, and which rule has been adhered to ever since, it stated in the following language: 'A man may not take two contradictory positions, and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again.' See, also, Sackett v. Farmers' State Bank, 209 Iowa 487, 228 N.W. 51."

 It appears from the complaint in this case that at the time this action was commenced that the plaintiff knew that the defendant C. E. Beall had made an unauthorized purchase of the mortgaged corn and that the plaintiff knew about the check transaction with the defendant Williams Savings Bank. It has been heretofore noted that when there has been an unauthorized sale of mortgaged property the mortgagee may accept the proceeds and thus ratify the sale. It is optional with the mortgagee whether he wishes to ratify the unauthorized sale or whether not to ratify it. Obviously, he cannot do both. In the present case when the plaintiff commenced this action with knowledge of the situation, it claimed the proceeds of the unauthorized sale from the defendant Williams Savings Bank. Having chosen to claim the proceeds of the unauthorized sale the plaintiff ratified the unauthorized sale. That ratification reverts back to the original sale of the corn and made that sale an authorized one. The original sale to the defendant C. E. Beall of the mortgaged corn having been thus authorized, the defendant C. E. Beall is not guilty of converting the mortgaged corn.

It is the holding of the court that the defendant Williams Savings Bank is liable to the plaintiff for the proceeds of the sale of the mortgaged corn up to the amount of the unpaid corn note with interest and that the defendant C. E. Beall is not liable to the plaintiff. Judgment will be entered accordingly.